Lucien ARDITI and Lillian Coleman, Plaintiffs (Appellants-Respondents),

v.

MASSACHUSETTS BONDING & INSURANCE COMPANY, a Corporation, The Travelers Insurance Company, a Corporation, and Brooks Erection Company, a Corporation, Defendants (Appellants-Respondents).

No. 46347.

Supreme Court of Missouri,

Division No. 1.

July 14, 1958.

Motion for Rehearing or to Transfer to Court en Banc Denied Sept. 8, 1958.

738

James W. Jeans, Hullverson, Richardson, Hullverson & Jeans, St. Louis, for plaintiff-appellant Lucien Arditi.

John T. Murphy, Jr., and Morris B. Kessler, St. Louis, for plaintiff-appellant Lillian Coleman.

Herbert E. Barnard, Richard Moll, James K. Moran, Walther, Barnard, Cloyd & Timm, St. Louis, for Massachusetts Bonding & Ins. Co.

Hocker, Goodwin & MacGreevy and John M. Goodwin, St. Louis (Harold B. Bamburg, St. Louis, of counsel), for The Travelers Ins. Co., respondent-appellant.

J. C. Jaeckel, Moser, Marsalek, Carpenter, Cleary, Jaeckel & Hamilton, St. Louis, for respondent Brooks Erection Co.

HYDE, Judge.

Action in equity in nature of garnishment, under Section 379.200 RSMo 1949, V.A.M.S. Plaintiffs each sought payment of a judgment for $10,000.00 against defendant Brooks Erection Company (hereinafter called "Brooks"), in their respective actions for personal injuries, and sued to collect from the two defendant insurance companies (hereinafter called "Massachusetts" and "Travelers"). All parties have appealed from the judgment entered, which prorated the amount to be paid by the insurance companies, both as to what was found due to plaintiffs on their judgments and what was found due to Brooks on its crossclaims of $7,974.05 against the two insurance companies; and which also found against Travelers on its crossclaims against Brooks and Massachusetts.

The facts upon which plaintiffs obtained their judgments for personal injuries may be found in our opinion in Arditi v. Brooks Erection Co., Mo.Sup., 266 S.W.2d 556. It is sufficient to say here that plaintiffs were passengers on a bus which was struck by a Shell Oil Company tractor-trailer tank truck, driven by an employee of Brooks. The tank on this truck had been repaired by Brooks and it was being delivered by its employee at the request of Shell. The Massachusetts policy, issued to Brooks, covered the use of non-owned automobiles of the kind involved, insuring "the use in such business, by any employee of the named insured, of any non-owned automobile of the commercial or truck type if such use of such automobile is occasional and infrequent." The principal contention of Massachusetts is that Brooks was not covered, in this case, because the use of the Shell tractor-trailer tank involved was not "occasional and infrequent;" and it says this issue is res judicata because of the findings required by the verdict directing instruction upon which the jury in plaintiffs' personal injury cases found against Brooks.

■ Considering the res judicata claim first, the part of the instruction relied on was: "that on the occasion mentioned in evidence and for a long time prior thereto the defendant Shell had an arrangement with the defendant Brooks whereby the Shell trucks worked upon by the defendant Brooks would be returned to the defendant Shell by an employee of the defendant Brooks, and that such was the custom and practice not only on the occasion mentioned in evidence, but for a long time prior thereto, and that at the time and place of the collision mentioned in evidence the truck was being operated by an employee of defendant Brooks." However, while this instruction required a finding that the *arrangement* to return trucks had existed for a long time and had been followed as a custom and practice, it required no finding as to the frequency of the return of trucks, how many trucks had ever been returned

by Brooks' employees or how many were returned in any year when the Massachusetts policy was in effect. Nor was there any finding required that the particular truck involved had ever been driven before by any Brooks' employee. Defendant cites 50 C.J. S. Judgments § 712, pp. 168–181; Dolph v. Maryland Casualty Co., 303 Mo. 534, 261 S.W. 330; Soukop v. Employers' Liability Assur. Corp., 341 Mo. 614, 108 S.W.2d 86; Tomnitz v. Employers' Liability Assur. Corp., 343 Mo. 321, 121 S.W.2d 745; but these authorities are not in point in the situation herein involved. Massachusetts did not plead res judicata (see Section 509.090 RSMo 1949, V.A.M.S.; Berghorn v. Reorganized School District No. 8, 364 Mo. 121, 260 S.W.2d 573; Chance v. Franke, 348 Mo. 402, 153 S.W.2d 378, 380) and we do not find it is established by plaintiffs' pleadings or evidence, as Massachusetts claims. We, therefore, hold that the issue of "occasional and infrequent" use was not res judicata.

 As to this issue, Brooks' evidence showed that Brooks repaired 50 or 60 Shell tanks each year and that only about 10% of them were delivered by Brooks' employees; the shop foreman said about ¹⁄₁₂. Massachusetts had evidence that from ½ to ⅔ were delivered by Brooks. In any event, it appears that sometimes Shell sent their men for the tank trucks; that at other times Brooks delivered them; and that this was usually arranged as to each tank truck, either when it was sent for repairs or after the repairs were completed. However, there is no evidence that the particular tank unit involved had ever been previously repaired by Brooks or driven by any of its employees so that it appears that its use was "occasional and infrequent." The wording of the policy (hereinabove quoted) clearly seems to apply to each particular automobile used and, in the absence of any other restriction, this would seem to be its reasonable construction. Anyhow, we must hold there was sufficient substantial evidence to warrant the finding of the Court that the use

was occasional and infrequent. In its reply brief, for the first time, Massachusetts says that delivering a customer's truck is not use in its business. It cites no authority for such construction and this seems inconsistent with its claim that it was usual and customary for Brooks in its business to make such deliveries. Furthermore, there is no evidence that Brooks ever drove non-owned cars for any other purpose. Considering the circumstances shown in the evidence under which this policy was written (Massachusetts knowing the nature of Brooks' business and its reasons for obtaining this insurance), and in the absence of any definition of "use in such business" in the policy, we conclude this contention is without merit. We, therefore, hold the trial court properly ruled that this policy does insure the operation involved and that Massachusetts is liable to pay plaintiffs' judgments against Brooks.

Travelers insured Shell but its policy contained a so-called "omnibus clause" stating: "Definition of Insured. The unqualified word 'insured' includes * * * any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission." However, the policy contained the following exception, upon which Travelers relies, namely: "The insurance with respect to any person or organization other than the named insured does not apply * * * (b) to any person or organization, or to any agent or employee thereof, operating an automobile repair shop, public garage, sales agency, service station or public parking place, with respect to any accident arising out of the operation thereof." Travelers' claim is that Brooks was operating an automobile repair shop and for that reason was not covered by the Travelers' policy. It points out that Brooks' corporate articles gave it authority to operate an automobile repair shop. However, it is what it actually did rather than what it could have done that is decisive.

■ The evidence was that Brooks' business "was welding and erection of tanks and hoppers, smoke stacks, steaming of tanks, repairing leaks in tanks * * * boiler work, re-tubing boilers." Most of this work was done off the premises of Brooks in St. Louis; the work done on the premises mainly being steaming and welding of tanks. Steaming was necessary to get gasoline and gas fumes out before a tank could be welded. The only work done for Shell was to steam, weld and test tanks for leaks. Brooks' employees "were all riggers and welders and boilermakers," who belonged to the Boilermakers Union, none of them were automobile mechanics. Brooks had one licensed chauffer, a construction driver, who belonged to the Boilermakers Helpers and Teamsters Union. Brooks did no painting, body work or repair work on motor vehicles, either its own or those of others; but sent its own trucks to other companies for repairs. It had a fenced in lot, adjoining its building where it kept its own trucks and those of others left over night. In its shop in the building, it had welding equipment, erection equipment and a monorail with a chain hoist. It had done tank repair work for two or three oil companies other than Shell and had also repaired leaks in automobile gasoline tanks, all boilermakers' work. We do not think this evidence shows that Brooks was operating an automobile repair shop, and certainly it was sufficient substantial evidence to warrant a finding by the trial court that it was not doing so. Travelers argues that Brooks' business should be classed as an automobile repair shop because it had an element in common with it. It says of the excluded occupations: "All of them have one element in common: when the insured vehicle is entrusted to any one of them, control over its operation passes from the named insured to others over whom the named insured would have no control. The operation of the insured vehicle by one in any of the five classes excluded is not by the insured or by his agent, but by someone not under his direction or control and not in the insured's business, but in the business of the operator." It further says, quoting from Brower v. Employers' Liability Assur. Corp., 318 Pa. 440, 177 A. 826, the reasons for such exclusions are: "Without any control from the owner as to the selection of the driver, the place driven, and the manner of driving, the repairman having this entirely in his control, the hazard was evidently too great for the indemnity companies to assume, and, therefore, that hazard was excluded." Citing, also, Wendt v. Wallace, 185 Minn. 189, 240 N.W. 470; Paine v. Finkler Motor Car Co., 220 Wis. 9, 264 N.W. 477; Annotation, 47 A.L.R.2d 556. While the reasons stated are good ones for excluding the operations named in the policy, they are not sufficient to require the policy to be construed to include exclusions not stated therein. We, therefore, hold the trial court properly ruled Brooks' business was not an automobile repair shop. Since it is not claimed it was within any other exclusion, we must hold that it was an insured under the Travelers' policy on the occasion in question and that Travelers is liable to pay plaintiffs' judgments against Brooks.

Brooks' crossclaims alleged the issuance to it of the Massachusetts policy and the issuance of the Travelers policy to Shell. It alleged that neither insurer would accept the defense of Brooks and that Brooks paid out certain sums of money in compromise settlement of threatened actions against it, for the defense of the actions commenced against it, and for other expenses and expenditures. It sought judgment against the insurers for the amounts so alleged to have been expended. Brooks also asked reformation of the Massachusetts policy to cover the occurrence in question if the court should find that the policy as written did not afford coverage. The court found for Brooks against both insurance companies for $7,974.05 and also

found that because of its findings in favor of plaintiffs and Brooks against Massachusetts, it was not necessary to reform that policy. Travelers also filed cross-claims against Massachusetts and Brooks in two counts. In Count I, Travelers sought recovery against Massachusetts for its expenses in the defense of Shell on the theory that the policy issued by Massachusetts afforded primary insurance in the collision and that Shell and Travelers were entitled to protection under the Massachusetts policy. It further prayed for a declaration that the Massachusetts policy afforded coverage to Shell and that the Travelers' policy afforded no coverage to Brooks. In Count II, Travelers pleaded the existence of a written indemnity agreement between Brooks and Shell whereby Brooks agreed to indemnify Shell on account of any losses arising out of the repair of Shell trucks by Brooks. Under this indemnity agreement Travelers claimed indemnification on account of the losses and threatened losses resulting from the collision and for the damage to the Shell tractor. The court found for Massachusetts and Brooks on these counterclaims of Travelers.

Massachusetts and Travelers rely on the same grounds for reversal of Brooks' judgment on its crossclaims against them, on which they rely for reversal of the judgment on plaintiffs' petition for payment of their personal injury judgments. That is, each insurance company contends that its policy did not cover Brooks for the reasons hereinabove discussed. Nothing else is briefed (except Travelers' claim hereinafter discussed as to indemnity) so our rulings as to their liability on their policies to pay plaintiffs' judgments determines their liability on their policies to pay Brooks' crossclaims.

Considering Travelers' crossclaims, the blanket order contract under which Brooks worked on Shell tanks contained the following provision: "When this contract provides for performance of any work, the following conditions, in addition to the foregoing General Conditions, shall apply: 1. Indemnity: Contractor shall indemnify and hold Shell harmless from and against any and all loss, liability and expense by reason of any claim or suit for injury to or death of persons (including Shell's agents and employees) or damage to property (including Shell's property) resulting from or arising in connection with the performance of this contract, and shall defend any such claim or suit and pay all costs and expenses incidental thereto, provided, however, that Shell shall have the right, at its option, to participate in the defense of any such claim or suit, without relieving Contractor of any obligations hereunder." The blanket order contract also contained a provision requiring Brooks to carry Automobile Public Liability and Property Damage Insurance. No judgments were rendered against Shell but it had expenses in defending suits against it (attorneys' fees) which were paid by Travelers; and it was stipulated that $2,250 was a reasonable fee in defense of plaintiffs' actions and others against Shell and that $1,125 was a reasonable fee for its attorneys in this action. Damages to the Shell tractor were shown to be at least $1,500. Under its policy Travelers was subrogated to all of Shell's rights of recovery against Brooks and anyone else on account of payments made by Travelers under its policy. Travelers say: "The only issue under the indemnity agreement is whether the loss, i. e., the expense in the defense of Shell, was one 'resulting from or arising in connection with the performance of this contract.'" Travelers also says Brooks is liable for the damage to the tractor both under the indemnity contract and under its common law liability as bailee of the truck.

■ The defense to this claim under the indemnity agreement was that the work on the tank, on the occasion involved, was not done for Shell under the blanket order contract, containing the indemnity, but was done for and at the direction of Progress Manufacturing Company, of Arthur, Illi-

nois. The evidence was that the truck involved had been at Progress for work but the leak in the tank had not been discovered, and that it was sent to Brooks by Shell at the request of Progress. Mr. Padberg of Shell, who sent the truck over, told Mr. Reinhart, President of Brooks, to hold up on billing, before the driver brought the tank in; and later told him to send the bill to Progress. It was not billed at the rate provided for in the Shell blanket order contract, but at a higher rate, which Progress paid. Padberg told Reinhart what was to be done on the tank and the work was done in the same way as had previously been done on Shell equipment for several years. Since both parties to the blanket order contract treated this transaction as not being under it, our conclusion is that the trial court properly ruled the indemnity was not applicable. As to the damage to the tractor, Travelers alleged that it became obligated to pay this to Shell under the terms of its policy (it did not say it had paid) and had received an assignment of the rights of Shell under the indemnity provision of its contract with Brooks. However, no such assignment was offered in evidence by Travelers; and Padberg called as a witness by Travelers, knew nothing about an assignment and did not know whether any amount was paid by Travelers to Shell for this damage. Furthermore, Travelers showed no liability to Shell for this loss because its policy in evidence expressly excluded liability for property damage to property owned by its insured, stating: "This policy does not apply * * * to injury to or destruction of property owned by * * * the insured." Brooks also had substantial evidence that the casualty was caused by the negligence of Shell in sending a tractor with defective brakes without giving any warning of this condition. The Massachusetts' policy likewise excluded liability for this loss, excluding injury to property "in charge of or transported by the insured;" and the damaged tractor was at the time "in charge of and transported by"

its insured Brooks. We, therefore, hold the trial court properly ruled against Travelers on its crossclaims.

After judgment was entered against both insurance companies, the court filed an amended decree (on after trial motions) again rendering judgments for plaintiffs and Brooks on their claims against the insurance companies; but declaring, as between these companies only, Massachusetts was liable for two-thirds of these judgments and Travelers for one-third. Plaintiffs' and Brooks' appeals are from this part of the decree; they contend for a judgment for the full amount against both insurance companies without any qualifications. However, since the decree expressly states that this part applies as between the insurance companies only, we do not see that it affects the judgments for plaintiffs and Brooks against them and the insurance companies do not claim it does.

Each insurance company contends that, if it is liable, its policy is excess insurance only and that the policy of the other provides the primary insurance. The Massachusetts policy provided that its insurance, as to non-owned automobiles, "shall be excess insurance over any other valid and collectible insurance available to the insured, either as an insured under a policy applicable with respect to the automobile or otherwise." The Travelers policy had a similar provision as to non-owned automobiles, but its "other insurance" provision was amended by an endorsement, as follows: "Condition 12 (other insurance) is amended to provide that the insurance afforded by this policy shall be excess over any other valid and collectible insurance if the insured has other insurance against the loss covered by this policy." As to effect of endorsement, see Michigan Alkali Co. v. Bankers Indemnity Co., 2 Cir., 103 F.2d 345. Both policies also contained the following provision: "If the insured has other insurance against a loss covered by this policy the company shall not be liable under this

policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss." The apportionment made by the Court in its amended decree was on this basis.

■ Massachusetts cites 8 Appleman on Insurance Law and Practice 333, Sec. 4914; 46 A.L.R.2d 1165; and particularly relies on Travelers Indemnity Co. v. State Automobile Ins. Co., 67 Ohio App. 457, 37 N.E.2d 198 and American Surety Co. of New York v. American Indemnity Co., 8 N.J.Super. 343, 72 A.2d 798. It says the owners insurance (in this case Travelers) is primary and that of the driver of a non-owned automobile is excess. However, as Travelers points out, there was an "excess insurance" clause in only one of the policies involved in those cases. Massachusetts claims this makes no difference, saying that its insurance under the excess coverage provision does not constitute "other valid and collectible insurance" because it is not available to the insured until the primary policy has been exhausted; but this depends upon the premise that the car owner's insurance is always primary and we not think this is always true, depending instead on the policy provisions and other circumstances. Travelers argues that the Massachusetts policy should be held the primary insurance on the ground that it insured Brooks which was the actual tort-feasor and thus primarily liable for the injuries, citing Maryland Casualty Co. v. Bankers Indemnity Ins. Co., Ohio App., 200 N.E. 849; and American Automobile Ins. Co. v. Penn Mutual Indemnity Co., 2 Cir., 161 F.2d 62. The parties agree that this question has never been decided in Missouri and our conclusion is that we should follow the rule stated in Oregon Auto Ins. Co. v. United States Fidelity & Guaranty Co., 9 Cir., 195 F.2d 958, 960, as follows: "In our opinion the 'other insurance' provisions of the two policies are indistinguishable in meaning and intent. One cannot rationally choose between them. We understand the parties to concede that where neither policy has an 'other insurance' provision, the rule is to hold the two insurers liable to prorate in proportion to the amount of insurance provided by their respective policies. Here, where both policies carry like 'other insurance' provisions, we think (they) must be held mutually repugnant and hence be disregarded." See, also, Celina Mutual Casualty Co. v. Citizens Casualty Co., 1950, 71 A.2d 20, 21 A.L.R.2d 605 (Anno.); Employers Liability Assur. Corp. v. Pacific Employers Ins. Co., 1951, 227 P.2d 53; Bituminous Cas. Corp. v. Travelers Ins. Co., D.C.Minn.1954, 122 F.Supp. 197. We think that is the situation here and we hold that the trial court correctly apportioned the liability of the two insurance companies as between them.

The trial court's amended decree is affirmed.

All concur.