**Marvin MYERS, Plaintiff-Respondent,**

v.

**CITY OF PALMYRA, Missouri, a Municipal Corporation, Defendant-Appellant.**

**No. 33037.**

St. Louis Court of Appeals.

Missouri.

July 16, 1968.

Motion for Rehearing or for Transfer to Supreme Court Denied Sept. 4, 1968.

Harry J. Mitchell, Palmyra, J. Andy Zenge, Jr., Canton, for defendant-appellant.

Myrl B. Sternke, Palmyra, Rendlen & Rendlen, Hannibal, J. Patrick Wheeler, Canton, for plaintiff-respondent.

ANDERSON, Presiding Judge.

This is an action for damages for personal injuries alleged to have been sustained by plaintiff as a result of a negligent act of an employee of the defendant. A trial before the court and a jury resulted in a ver-

dict and judgment in favor of plaintiff in the sum of $12,000.00. Defendant has appealed from the judgment.

The petition alleged that the defendant, City, on January 21, 1959, through its officers, agents and employees, attempted to remove an accumulation of snow from its streets to make same passable for traffic and for use by the public; that at said time defendant provided for that purpose a tractor with other mechanical hydraulic devices connected thereto, which equipment was operated by its employees and agents under the direction of the city officers; that said employees operated same in such a negligent manner as to cause certain mechanical and hydraulic attachments thereto to strike plaintiff and crush him between said devices and said tractor thereby inflicting upon him serious and permanent injuries.

The acts of negligence charged in said petition were:

"(a) That the City of Palmyra carelessly, negligently employed inexperienced agents, servants and employees to perform work for the city and to clear snow from the city streets at the times herein set out.

"(b) That the Defendant, City of Palmyra, through its agents, servants and employees caused said tractor and the mechanical or hydraulic devices and attachments thereto to be operated in such a manner that the same was dangerous and unsafe.

"(c) That the Defendant, City of Palmyra, through its agents, servants and employees caused said tractor and the mechanical or hydraulic devices and attachments thereto to be operated in such a manner that the same, without warning to the Plaintiff, moved and struck the Plaintiff and crushed the Plaintiff while he stood upon the street and public way within the corporate limits of the Defendant, City of Palmyra.

"(d) That the Defendant, City of Palmyra, through its agents, servants and employees saw or by the exercise of due care should have seen the Plaintiff, standing near said tractor and attachments thereto, in a position of imminent peril of being struck and injured by said equipment in time thereafter and with the instrumentalities at hand and with safety to themselves and others to have warned the Plaintiff of the impending movement of the tractor and its attachments or to have not moved said equipment or to have moved said tractor and its attachments in such a manner as to avoid striking and crushing and injuring the Plaintiff, but negligently failed so to do, thereby striking and injuring Plaintiff with said equipment."

The petition then set out the alleged injuries suffered by plaintiff as a result of the alleged negligent acts. The prayer of the petition was for damages in the sum of $30,000.00.

Defendant City, in its amended answer, after specific denials of the allegations of plaintiff's petition, alleged that plaintiff's injuries were brought about by his contributory negligence; that the instrument that injured plaintiff was owned and operated by an independent contractor; that if defendant was responsible for said injuries its liability would be under the Workmen's Compensation Law; that if plaintiff was injured by the negligence of any employee of defendant, such negligence was that of his fellow servant, Carl Bross; that plaintiff assumed the risk of his employment, and whatever injuries he received arose from the risk assumed; and that plaintiff was a mere interloper or volunteer as to defendant.

Plaintiff's reply consisted mainly of specific denials of the allegations of said amended answer.

Defendant contends that the court erred in overruling its motion for a directed verdict. In support of this contention, it is urged that the evidence showed that plaintiff was a volunteer; that the only duty owed him by defendant was to re-

frain from injuring him through wilful, wanton or reckless conduct; and that a breach of that duty was not shown. Said contention makes necessary a review of the evidence and a consideration thereof in the light most favorable to plaintiff.

Plaintiff was a resident of Palmyra, Marion County, Missouri. Palmyra was and is a special charter city duly organized under the laws of the State of Missouri. At all relevant times there were public ways and streets within the boundaries of said city which had been constructed and maintained by it. On January 21, 1959, and the day prior, there was a heavy snowfall in the area rendering the streets impassable or almost impassable. During the day, the Highway Department, by use of a snowplow, had pushed the snow on Main Street toward the gutters on both sides of the street to make the street passable for traffic. This resulted in snowbanks on each side of the street. These snowbanks were about four feet high and about five feet wide. Thereafter the city decided to remove these snowbanks and to clear the sidewalks of ice and snow. To accomplish this result, the Street Commissioner, Archie Houston, hired extra men to clear the sidewalks, and rented tractors with front end loaders to pick up the snow from the snowbanks and deposit it into dump trucks. These trucks, when filled, would then be driven away and the load disposed of.

One of the tractors used in this operation belonged to Glen Huffman who was engaged in the implement business in Palmyra. Attached to the tractor and located behind the driver's seat was equipment referred to in the evidence as a backhoe. It consisted of a boom that operated like an elbow, and on its end was a scoop. The boom could be extended toward the rear or pulled back against the tractor. It could also be operated in a lateral direction in an arc of about 12 or 13 feet. The scoop could be extended outward or backward without moving the boom. Hydraulic power controlled by levers operated by the driver of the tractor was employed to effect the movements above described. Mr. Huffman testified that the boom would move from side to side to a certain extent if the lever for that purpose is operated even though the motor of the tractor is not running. Also that the scoop could be moved backward to a certain extent even though the motor was not operating. The equipment was new and in good operating condition at the time it was rented by the city and when returned to the owner, Glen Huffman, after its use in the snow removal operation.

Mr. Houston, the Street Commissioner, negotiated with Mr. Huffman for the use of the tractor. The agreement reached was that Mr. Huffman would furnish the tractor and an operator. Carl Bross was the operator sent with the tractor. After the work was accomplished, Mr. Huffman billed the city for the rent of the tractor and for the time Bross worked on the job. Mr. Huffman testified that he had no control over the tractor or Bross after Bross left his place of business with the tractor to engage in the snow removing operation. Someone from the city kept a record of the number of hours the tractor was used and the hours spent by Bross on the job. This record showed nine hours for Bross and an additional twelve hours for the rental of the tractor. This information was then given to Huffman, who made up his bill to the city based on this information. The bill was paid and Bross was paid for his services from the money received. Mr. Huffman testified that he at no time went into the area where the snow removal was taking place; that he did not see Bross operate the tractor; that he had nothing to do with where Bross worked or how long he worked; and that he had nothing to do with whether Bross was sent back or discharged. He also testified that it was understood that he was to furnish one operator, but if another was needed the city should secure him. The reason why Huffman wanted his man to operate the tractor was because the

tractor was new. Under the agreement for the use of the tractor, Huffman was to furnish gasoline for the operation of the tractor.

Two of the extra men hired that day were Thomas E. Schaffer and Max Schaffer. At 6:00 P.M. that day they reported to Archie Houston for work. The latter directed them to shovel the snow from the sidewalks and doorways on Main Street into the street beyond the curb. These two men worked at this particular job, on the west side of the street, until about 10:00 or 10:30 P.M. At that time Thomas E. Schaffer was instructed by Houston to operate a tractor which he did until about 5:00 A.M. the next morning. At the time, Thomas left to operate the tractor; Max went to work on the east side of the street.

About mid-morning of January 21, plaintiff went to see Lynn Hutcherson at his filling station, known as Hutch's Service Station, located at the north end of the business section of Main Street. Hutcherson was the Mayor of Palmyra. The purpose of the plaintiff's visit to the Mayor was to seek employment. At first they talked about going to the Highway Department, then Hutcherson said to him, "why don't you go up and see Archie Houston * * * they are going to remove snow tonight on Main Street, perhaps I could get you a job there." Later that day, around 6:00 P.M., plaintiff met Houston on Main Street and asked him if he needed any help. Houston replied that he did not need any extra help at the time but for him to return later, that he might get work because some of his regular city employees would have to quit inasmuch as they would have to work the next day. The two then parted each going a different direction. Plaintiff had no further conversation with Houston about the matter. Plaintiff then came upon the Schaffers who were shoveling snow from the sidewalk. One of them remarked to plaintiff, "why don't you get your hands out of your pockets and get a shovel and help us?" Plaintiff

replied, "that's just what I'm going to do." Plaintiff then left, went home and returned with a shovel. He worked with the Schaffers helping clear the sidewalk until the Schaffers were sent elsewhere at about 10:00 or 10:30 P.M. After that plaintiff went to the next block and worked, for how long does not appear.

Plaintiff gave the following testimony:

"Q. Did anyone for the City, Mr. Archie Houston, or Lynn Hutcherson or any other official of the city, ever employ you that evening? A. No, sir, they did not. Q. Did they ever employ you at any time during the day of January 21st, or January 22nd, 1959? A. No, sir. Q. Were you ever paid for any work for the city of any kind, shoveling snow or otherwise, for the dates January 21st or January 22nd, 1959? A. No, sir."

About 11:30 P.M. the motor of the tractor, being driven by Carl Bross began to "sputter". At that time Bross told Howard Crane, a truck driver, that the tractor was running short of fuel, and requested Crane to follow the tractor with his truck to the filling station so that he could push the tractor to the station if it became necessary. At that time the tractor was about a quarter of a mile from Hutch's Service Station. Bross intended to refuel the tractor at Hutch's. Plaintiff was present and standing on the sidewalk at the time the above conversation took place. He had been shoveling snow off the sidewalk at that point. Crane, after observing plaintiff, asked him to get into the truck and ride to the filling station. Plaintiff accepted this invitation and climbed aboard the truck and occupied the seat alongside Crane. Bross then proceeded forward with the tractor, and Crane followed with his truck. Both headed north to Hutch's. Bross got to within about 100 yards south of the gasoline pumps and ran out of gasoline. Crane stopped his truck. Both vehicles were on the east side of the street. Hutch's was on the

east side of the street. Crane then drove his truck forward and stopped with the front end of his truck within inches from the nearest part of the backhoe of the tractor. Crane then told plaintiff to get off the truck and see if the tractor could be pushed without doing damage to the radiator of the truck. His intention was to contact the tractor with the bumper of the truck. Plaintiff got off the truck and walked to its front end. There was a street light on the west side of the street, and the lights on both the tractor and truck were on. Plaintiff testified that there was enough light for him to see what part of the backhoe arrangement was nearest the truck. Crane testified he could see plaintiff in the headlights of the truck, and Bross on the tractor. He stated he saw no one else on the tractor. Plaintiff testified that the boom on the tractor would contact the hood of the truck before the bumper would contact the scoop, that the boom was inches away from the hood of the truck and the bottom of the scoop was about a foot from the bumper. It seems as though it was Crane's intention to push the tractor by pushing on the scoop with the bumper of the truck. In order to accomplish this it was necessary to move the scoop backward toward the truck. Plaintiff told Bross that the angle of the scoop on the bottom of the boom would have to be pushed back before it would contact the bumper. He also asked Bross if this could be done by hand and Bross said it could not. Bross was looking at plaintiff during this conversation. Plaintiff was then standing east of the scoop and near the rear of the tractor. While in this position, plaintiff saw Bross reach for some kind of control and immediately thereafter the boom and scoop swung around and struck him. Crane gave the following version of the occurrence: "Q. Now tell us what happened then? A. Well, Carl Bross, * * * was sitting there and he touched something up there and that boom came swinging around just like that and hit him in the stomach and he fell just flat, mashed, he was just mashed flat as a pancake." He further testified that no one but Bross was on the tractor and that it would not have been possible for anyone but Bross to have operated the levers. Crane heard no warning that the boom was going to swing. Plaintiff testified that Bross gave no warning that the boom and scoop would be moved. Crane testified that at the time of the accident the tractor was stopped in the driveway of the filling station, and that it was sloped a bit toward the east, making the right side lower than the left. Plaintiff gave like testimony, stating that due to snow that had been piled up the tractor was tilted toward the east.

Mr. Huffman testified as follows:

"Q. Now assuming, if you will please, that the motor on the tractor is in operation and that the hydraulic system is activated so that the hydraulic implement can be used, or in use for a period of time, then assume further that the tractor is driven to a point where the motor stops, and assume further that the boom of the tractor on the backhoe arrangement, is up with the elbow joint bent and the hoe, or scoop part of the tractor—or the scoop part is back closer to the tractor than the elbow of the boom is, and that its up in this position at the time that the tractor motor stops, tell us whether or not in your opinion that if one of the levers, or control devices, is operated that it would be possible, if the lever was operated to permit the boom to swing from side to side, that the boom would swing from side to side, depending on which way the lever was operated, even though the motor was shut off? A. It would move to a certain extent. Q. All right, and if the proper lever is moved can that—assuming the same factual situation, is it possible that the hoe, itself, or the scoop itself, can be moved backward to a certain extent even though the motor is dead? A. Yes. Q. And if the wrong lever were pulled, is it possible that the boom could swing around enough so that

it would strike objects to the left or right, if it swung to the left or right? A. If the tractor was setting on a high place it would swing to the low side. Q. Assuming that the tractor was sitting with the front end facing north and that the right wheel of the tractor, or east wheel it would be, was slightly lower and this control device was operated as we have previously been discussing, in what direction in your opinion, would the boom swing when that control was operated? A. To the low side. Q. That would be the east side? A. Yes."

At the conclusion of the opening statement made by counsel for plaintiff, and before any evidence was offered, counsel for defendant moved for a directed verdict, which was denied by the court; and this is assigned as error.

In his opening statement counsel gave an outline of what plaintiff intended to prove. In reciting the facts, plaintiff's counsel stated that in helping the Schaffers clear the sidewalks of ice and snow plaintiff acted as a "non-paid volunteer." Later he recited the facts with reference to plaintiff getting off the truck at the request of Crane to check whether the bumper of the truck would contact the scoop attached to the boom without injury to the hood of the truck by the boom.

The stated grounds for defendant's motion were that since it appeared from the statement of plaintiff's counsel that plaintiff was a volunteer at the time he was injured, and since there was a failure to state facts showing that plaintiff's injuries were the result of any wanton and wilful act on the part of defendant, a verdict should be directed for defendant.

After the court overruled defendant's motion, the trial proceeded. At the conclusion of plaintiff's case, defendant submitted a motion for a directed verdict. In this motion, the same grounds were asserted as relied on by defendant in its previous motion for a directed verdict at the close of the opening statement of plaintiff's counsel. The court overruled this motion. Defendant offered no evidence.

■ It is doubtless within the power of the trial court to direct a verdict on the opening statement of counsel, but this should not be done unless it clearly appears from plaintiff's opening statement that he cannot recover. Plaintiff is entitled to the benefit of all reasonable inferences that may be drawn from his counsel's statement. To warrant the court in sustaining such a motion, it is not enough that the statement be defective or lacking in definiteness, but it must clearly appear therefrom, after resolving all doubts in plaintiff's favor, that no cause of action in fact exists. Bush v. Anderson, Mo.App., 360 S.W.2d 251; Hays v. Missouri Pacific R. R. Co., Mo., 304 S.W.2d 800; National Dairy Products Corp. v. Freschi, Mo.App., 393 S.W.2d 48.

With the foregoing rules in mind, we have examined the entire opening statement of plaintiff's counsel and the law with respect to the duty owed a person lawfully upon the public highway, and have reached the conclusion that the trial court did not err in overruling defendant's motion for a directed verdict at the close of plaintiff's opening statement.

Defendant contends that the court erred in overruling its motion for a directed verdict offered at the close of plaintiff's case, for the reason that the evidence failed to show negligence on its part. It is urged that since plaintiff was a volunteer the only duty owed plaintiff was not to injure him through wilful and wanton negligence, which the evidence failed to establish.

Defendant has cited a number of cases in support of its position. We have examined all of those cases, but will not attempt, a detailed analysis of them. They lend no aid to the solution of the problem before us. They stand for the proposition that a person who performs services on the

property of a party, at the request of one who has no authority to contract for such services, cannot be considered an employee of said party, but must be considered a volunteer and a trespasser or licensee to whom the party owes only the duty not to injure such person through wanton and wilful negligence.

■ Although plaintiff voluntarily rendered services for defendant he was in no sense a trespasser or licensee at the scene of the accident. A jury could reasonably find from the evidence that he was lawfully on a public street or public driveway when defendant's employee, Bross, manipulated the lever which caused the boom and scoop to swing around and strike plaintiff; and that since Bross knew of plaintiff's presence in a position where he would likely be struck and injured, Bross was negligent in causing the movement of the boom and scoop without warning plaintiff of his intended act.

It is next urged that a finding of negligence in this case could only rest on speculation and conjecture; that the testimony of Huffman, the expert, indicated only a possibility that the boom would move to a certain extent if the lever controlling it was pulled when the motor was not operating, and only a possibility that it would swing to the low side; and that it was just as probable that an unforeseen mechanical defect caused plaintiff's injuries as was negligence on the part of Bross. These points were not grounds specified in defendant's motion for a directed verdict, but appear for the first time in defendant's brief on appeal.

■ Huffman definitely stated that if the lever controlling the movement of the boom was operated, the boom would swing to the side to a certain etxent even though the motor was not running, and that if one side of the tractor was lower than the other, the boom would swing to the low side. There was evidence that the tractor was resting on an incline with the low side to the right; that plaintiff was standing to the right of the tractor; that the boom would swing only if the controls were operated; that Bross made a movement toward the controls, and immediately thereafter the boom swung to the right and struck the plaintiff; that prior thereto Bross had observed plaintiff in the position he was in beside the tractor. It further appears from the evidence that the tractor with its attachments were new; that defendant continued to use the tractor after the accident; that the tractor was in good operating condition at the time it was delivered to defendant and when it was returned to Huffman; and there is no evidence in the record of any mechanical defect, or any unforeseeable cause of the movement of the boom.

In our judgment there is no merit to the point urged. The facts and circumstances found in the record are sufficient to warrant the submission of the case to the jury on the theory of negligence on the part of the defendant's agent, and this without speculation and conjecture.

Defendant next complains of Instruction No. 5. Said instruction defined negligence as failure to use that degree of care that an ordinarily careful and prudent person would use under the same or similar circumstances. It is urged that the instruction was erroneous for the reason that the only duty owed plaintiff was to refrain from injuring him through wanton and wilful negligence.

■ Defendant, in the prosecution of the work at the time in question, was under the duty to use ordinary care for the safety of the public lawfully upon the street. Joshmer v. Fred Weber Contractors, Inc., Mo.App., 294 S.W.2d 576. The instruction complained of was proper.

Defendant contends that the court erred in permitting counsel for plaintiff in his closing argument to read only part of Instruction No. 3. Instruction No. 3 was a verdict directing instruction and the complaint urged here is that plaintiff's counsel did not read paragraph 5 of said instruc-

tion which required a finding that plaintiff sustained damage as a direct result of the negligence hypothesized. In that portion of the argument that led up to the matter complained of, plaintiff's counsel attempted to answer the contention that the city could not be held liable for the negligence of Bross, by referring to the arrangement between Huffman and Houston with reference to the renting of the tractor with Bross as operator. There then appears the following:

" * * * The Court says, and this is the first sentence of this Instruction No. 3, that 'First, if you find and believe that the defendant City of Palmyra undertook to remove snow from its streets to maintain the streets open for travel', and that Carl Bross did it and he was negligent, then they—

"Mr. Zenge: (Interrupting) If the Court, please, we submit he has got to read the rest of the Instruction. He can't just stop with a part of it. I think he has to read the whole thing.

"The Court: Well, the jury will see those instructions, overruled."

Counsel for plaintiff then continued with his argument without again referring to said instruction, but discussed the evidence relating to the issues submitted by Instruction No. 3, including the issue as to the negligence of Bross causing the boom to swing and strike plaintiff. Thereafter the following transpired:

" * * * And now about the measure of damages—

"Mr. Zenge: Now wait just a minute, if the Court please, I want to object. He said he was going to read all of Instruction 3, and he has deliberately left off the last paragraph, which throws an entirely different light on this than he has represented to this jury.

"The Court: The instructions are there and the jury will read the instructions."

A trial court is allowed large discretion in permitting and restraining arguments of counsel, and the appellate court will not interfere unless such discretion is abused. An examination of the record in this case fails to show that the trial court abused its discretion in failing to require plaintiff's counsel to read all of Instruction No. 3.

On cross-examination, the following question was put to plaintiff's witness, Huffman: "Q. Now, Mr. Huffman, after this accident, I will ask you whether or not you were threatened with a lawsuit in regard to it?" Plaintiff's counsel objected to the question as improper. The court sustained the objection. Counsel for defendant then made the following offer of proof: "Mr. Mitchell: I offer to show by this witness that after Marvin Myers was injured in this accident of January 21, 1959, that there was a threatened lawsuit against this witness, and I was offering to show this for the purpose of showing the witness was biased and prejudiced especially in his claiming that Carl Bross was not his agent or employee at the time of the accident." Plaintiff's objection to the offer of proof was sustained, and defendant assigns this ruling as error.

Although a trial court is invested with a substantial measure of discretion as to the scope and extent of cross-examination of witnesses, that discretion should not be exercised to deny absolutely the right to disclose collateral matters bearing on the witnesses' credibility. Mark v. St. Louis Public Service Co., Mo., 299 S.W.2d 446; Stanziale v. Musick, Mo., 370 S.W.2d 261. Here that right was denied, but in our judgment the error was such as could not affect the merits of the action. There was no attempt by defendant to produce testimony from any witness to contradict the testimony of Huffman that Bross was at the time of the accident working under the direction and control of defendant's street commissioner.

Neither Bross nor the street commissioner were called as witnesses to refute this testimony. Nor was the Mayor called by defendant to testify about the matter. Defendant offered no evidence in the case. In fact there was no real live issue concerning the matter except the one question put to the witness concerning a threat to bring a suit, which was clearly barred, at the time of trial, by the statute of limitations. In our judgment its value as evidence was so weak that it could not have materially affected the result of the trial. Under the direction of Civil Rule 83.13(b) V.A.M.R., we rule the point against defendant.

The judgment is affirmed.

WOLFE, J., and JACK A. POWELL, Special Judge, concur.