**CITY OF PALMYRA, Missouri, a Municipal Corporation, Plaintiff-Appellant,**

v.

**The WESTERN CASUALTY AND SURETY COMPANY, a Corporation, Defendant-Respondent.**

No. 34195.

Missouri Court of Appeals, St. Louis District.

Jan. 25, 1972.

Motion for Rehearing or to Transfer to Supreme Court Denied Feb. 29, 1972.

Mitchell & Meade, Palmyra, for plaintiff-appellant.

Carstarphen, Harvey & Wasinger, Hannibal, for defendant-respondent.

DOWD, Judge.

This is an action by the plaintiff (hereinafter City) against its own insurance company, based on the insurer's refusal to defend a suit brought by one Myers to recover for injuries sustained because of the negligence of the City. The insurer claimed that the policy it issued to the City did not provide coverage for the accident as alleged in Myers' petition. Myers obtained a verdict and judgment for $12,000 against the City.[1] Plaintiff further alleged

---

1. A complete statement of the facts regarding the injuries of one Myers are set out in Myers v. City of Palmyra, Mo.App., 431 S.W.2d 671 and made part of this record.

that it is paying this judgment and that it expended in the defense of this litigation $6,000 for attorneys' fees, $2,500 for court costs and $2,000 as interest and prayed judgment against the defendant in the amount of $22,500.

This is an appeal from the action of the court in sustaining defendant's motion to dismiss plaintiff's petition for failure to state a cause of action.

The determinative issue here is whether there is liability coverage for a "work bull," which is a four-wheeled, rubber-tired, self-propelled industrial-type tractor which is equipped with a backhoe and front end loader. The resolution of this issue depends upon the interpretation of a clause in the policy issued by defendant which extends coverage provided the tractor was " * * * being operated solely for locomotion but not otherwise."

The facts leading up to this issue: On January 20, 1959 and the day prior, there was a heavy snowfall in Palmyra which rendered the streets impassable. The Highway Department by using a snow-plow pushed the snow on Main Street toward the gutters on both sides of the street to make it passable for traffic. This resulted in snowbanks on each side of the street about four feet high and five feet wide. Thereafter the City decided to remove these snowbanks and to clear the sidewalks of snow and ice. The City rented tractors with front end loaders to pick up the snow from the snowbanks and deposit it into dump trucks.

One of the tractors used in this operation was rented by the City from one Huffman who also furnished the operator named Bross. Attached to the tractor and located behind the driver's seat was a backhoe. It consisted of a boom that operated like an elbow and on its end was a scoop. The scoop was operated by use of levers.

After operating this tractor for a number of hours in the loading of snow into dump trucks the motor of the tractor started to "sputter." Bross then told Crane, a truck driver for the City, that the tractor was running short of fuel and requested Crane to follow the tractor with his truck to the filling station so that he could push the tractor to the station if it became necessary. It was about one-fourth of a mile to the service station. Crane asked one Myers, who was attempting to gain employment with the City and who had been shoveling snow off the sidewalk, to ride in the truck with him which Myers did. Bross got to within about 100 yards from the station when the tractor stopped because it ran out of gasoline. It was the intention then to have the truck push the tractor to the service station. Crane then told Myers to get off the truck and see if the tractor could be pushed without doing damage to the radiator of the truck. It was the intention to push the tractor by pushing on the scoop with the bumper of the truck. To accomplish this it was necessary to move the scoop backward toward the truck. Bross manipulated the controls and the boom and scoop swung around injuring Myers.

On May 26, 1960 Myers sued the City for the injuries sustained. The circuit court dismissed Myers' petition for failure to state a cause of action. Our Supreme Court in Myers v. City of Palmyra, Mo., 355 S.W.2d 17 reversed this judgment and remanded the case for trial. On the trial of the case Myers obtained a jury verdict of $12,000 against the City. This judgment was affirmed by this court in Myers v. City of Palmyra, Mo.App., 431 S.W.2d 671.

The plaintiff was insured by the defendant under an automobile policy which contained a "Hired Automobiles" endorsement. The interpretation of this provision is the crux of this opinion. This endorsement contained the following provisions:

"It is agreed that such insurance as is afforded by the policy for Bodily Injury Liability, for Property Damage Liability

and for Automobile Medical Payments applies with respect to hired automobiles, subject to the following provisions:

"1. Definitions. The words 'hired automobile' shall mean a land motor vehicle, trailer or semitrailer used under contract in behalf of, or loaned to, the named insured provided such automobile is not owned by or registered in the name of (a) the named insured or (b) an executive officer or partner thereof or (c) an employee or agent of the named insured who is granted an operating allowance of any sort for the use of such automobile. The following described equipment shall be deemed an automobile while towed by or carried on an automobile not so described, but not otherwise; if of the crawler-type, any tractor, power crane or shovel, ditch or trench digger; any farm-type tractor; any concrete mixer other than of the mix-in-transit type; any grader, scraper, roller or farm implement; and, if not subject to motor vehicle registration, any other equipment not specified below, which is designed for use principally off public roads.

"The following described equipment shall be deemed an automobile while towed by or carried on an automobile as above defined solely for purposes of transportation *or while being operated solely for locomotion, but not otherwise;* if of the non-crawler type, any power crane or shovel, ditch or trench digger; and any air-compressing, building or vacuum cleaning, spraying or welding equipment or well drilling machinery. The word 'automobile' whenever used in the policy, with respect to the insurance afforded under this endorsement, shall include 'hired automobile.' " (Emphasis supplied).

Preliminary to the court's dismissal of plaintiff's petition, the court made written findings which this court found helpful. The findings pertinent to this appeal are as follows:

"Marvin Myers filed suit against the City May 26, 1960. On the first day of October, 1962, the City requested the Western Casualty and Surety Company to defend Myers suit. The insurance company denied coverage June 7, 1963.

\*    \*    \*    \*    \*    \*

"The Insurance Company denied any liability under the policy and refused to defend the City, claiming that the equipment by which Myers was injured was not within the policy definition and did not qualify under the policy definition, and at the time of the accident was not being used for the sole purpose of locomotion.

"The City brings their action against the Insurance Company for its failure to defend Myers' suit.

"Since the tractor with the mechanical hydraulic devices connected to it was rented, the 'Hired Automobiles' endorsement in the insurance policy controls. \*    \*    \*"

Then the trial court made the following written conclusions:

"1. The tractor with its hydraulic attachments was not a land motor vehicle within the meaning of the policy.

"2. Under the allegations of the *petition* in Myers v. City of Palmyra the tractor was not 'being operated solely for locomotion', but was being used for removal of an accumulation of snow from the City's streets.

"3. Under the *evidence* in the trial of Myers v. City of Palmyra the injury to Myers did not occur while the equipment was being 'towed by or carried on an automobile solely for purposes of transportation, and was not being operated solely for locomotion'. \*    \*    \*" (Emphasis theirs).

■ The City makes two contentions on this appeal. The first contention is that the court below erred in ruling that the de-

fendant's duty to defend the Myers' suit is determined solely by the cause of action pleaded. The City contends that the insurance company's duty to defend is determined from the policy provisions, the allegations of the petition, and the facts known to, which should have been reasonably apparent to, or could be known from a reasonable investigation by the insurer at the commencement of the suit. We believe this contention to be correct.

Our Supreme Court, en banc, in State ex rel. Inter-State Oil Co. v. Bland, 354 Mo. 622, 190 S.W.2d 227, held that the actual facts known to the insurance company, or which could be determined by a reasonable investigation, would control in determining the duty of an insurer to defend an insured. This decision follows the holding in Marshall's U.S. Auto Supply, Inc. v. Maryland Cas. Co., 354 Mo. 455, 189 S.W. 2d 529.

Applying this principle, it is obvious that a reasonable investigation by this insurance company would have disclosed the fact that the injury to Myers occurred while the tractor was in locomotion on a public road, and not while it was actually engaged in performing the job which it was hired to do. This will be discussed in detail in point two below.

We now move to the question of whether there was, in fact, coverage under the policy clause set out herein. Appellant contends that at the time of the accident, the tractor was being used "solely for locomotion," and that it was, accordingly, covered by the policy. We agree.

"Locomotion" is defined by Webster's Third New International Dictionary as "an act or the power of moving from place to place." What, exactly, was the tractor doing at the time of the accident? According to the testimony in the Myers case, it was in the process of moving from one place, (the job site), to another place, (the gasoline station). Snow removal operations had temporarily ceased, and the sole purpose of operating the tractor was to get it to a gas station for refueling.

Respondent's argument is based solely on the fact that before reaching its destination, the tractor ran out of gas, and at the time of the accident was unable to move under its own power. These facts, it is contended, made it impossible for the tractor to be "in locomotion," and, therefore, this accident does not fall within the operative clause of the policy.

In support of its position, respondent cites several cases which are factually distinguishable from the case here. Federal Insurance Co. v. Michigan Mutual Liability Co., D.C., 172 F.Supp. 858; Home Indemnity Co. v. Transport Indemnity Co., 263 Cal.App.2d 100, 69 Cal.Rptr. 504; and Sparkman v. Highway Insurance Co., D. C., 266 F.Supp. 197. In these cases the accidents all occurred *on the job site* and while the machines were so positioned that ordinary locomotion was impossible. In *Federal*, the right rear wheels of the crane were in the process of being replaced, 172 F.Supp. at p. 860; in *Home*, the crane's outriggers were extended, thereby immobilizing it, 69 Cal.Rptr. at p. 509; and in *Sparkman*, the truck's permanently-mounted winch used the power from the truck's engine, so that when the winch was being operated, as it was when the accident occurred, the truck could not be moved, 266 F.Supp. at p. 199.

■ The facts in the case before us are completely dissimilar and respondent's cited cases are not applicable. The tractor was not immobilized on a job site. It was stalled on a public road while en route to a gasoline station. The mere cessation of movement did not change its purpose. In fact the actual cause of the injury, the swinging of the backhoe, was for the very purpose of positioning the tractor so that movement could continue. And whether the tractor was operating under its own power or was being pushed, its movement would fall under the definition of locomotion given above.

The language in a policy must be accorded its plain meaning. Gabel v. Bird, Mo., 422 S.W.2d 341. We agree with appellant's contention that this clause can have no other application, and there could be no other reason for its inclusion in the policy, than to cover the vehicle under circumstances similar to those in this case. To adopt respondent's interpretation of the clause would be to reduce and confine the concept of locomotion and endow it with an ambiguity unwarranted by the language of the insurance policy and the plain and obvious meaning of the clause itself. To hold otherwise would be to render the clause a nullity.

Therefore, the judgment is reversed and the cause remanded.

BRADY, P. J., and LACKLAND H. BLOOM, Special Judge, concur.