**EQUITY MUTUAL INSURANCE COMPANY, Plaintiff-Appellant,**

v.

**INSURANCE COMPANY OF NORTH AMERICA and Grain Dealers Mutual Insurance Company, Defendants-Respondents.**

**No. 11268.**

Missouri Court of Appeals,
Southern District,
Division Two.

July 28, 1980.

David W. Ansley, James H. Arneson, Woolsey, Fisher, Whiteaker, McDonald & Ansley, Springfield, for plaintiff-appellant.

Meredith B. Turner, Turner, Reid, Duncan & Loomer, Springfield, for defendant-respondent, Insurance Co. of North America.

Bob J. Keeter, Jones, Keeter, Karchmer, Nelms & Sullivan, Springfield, for defendant-respondent, Grain Dealers Mut. Ins. Co.

PREWITT, Judge.

Equity Mutual Insurance Company (Equity Mutual) appeals from a judgment declaring that it and respondent Insurance Company of North America (INA) both provided primary liability insurance coverage on a tractor-trailer unit involved in a collision and that both should share the payments made in settlement of liability claims

and the costs of defense in proportion to the coverages provided by their respective policies. Equity Mutual contends that its policy is excess and that it is only obligated for claims after INA's liability limit has been exhausted. The trial court determined that respondent Grain Dealers Mutual Insurance Company was not liable to contribute toward the settlements or the cost of defense of the claims. In oral argument appellant conceded that the trial court was correct in its ruling regarding Grain Dealers Mutual Insurance Company.

House of Webster, Inc. (Webster) leased a tractor unit from Ryder Truck Rental, Inc. (Ryder) by "Truck Rental Agreement" stating that the tractor was rented "with liability", apparently referring to liability insurance. The date of the agreement is not shown but on the agreement is stated: "DATE & TIME OUT 10–4–74" and "DATE DUE IN 10/30/74". Thereafter Webster rented from Ryder a trailer unit by "Truck Rental Agreement". Its "DATE & TIME OUT" was "11–8–74" and "DATE DUE IN" was "12/4/74". A box was also checked on the rental agreement on the trailer indicating its rental was "WITH LIABILITY". In another place on the agreement an employee of Webster initialed a provision which would appear to require Webster to "provide liability insurance". Equity Mutual issued a "General Liability-Automobile Policy" to Webster effective December 14, 1973 through December 14, 1974. On November 17, 1974, there was in effect an automobile liability insurance policy issued by INA to Ryder.

While the units were being operated together on November 17, 1974 by an employee of Webster, they were involved in a multiple motor vehicle collision in Dallas County, Missouri. As a result of the collision, settlements for wrongful death and bodily injury totaled $356,250, of which INA paid $189,375 and Equity Mutual $166,875. Property damage claims were settled for $2,856.50. INA and Equity Mutual each paid $1,428.25. Equity Mutual expended $6,006.76 for attorneys fees and incurred $1,008.86 in court costs in defending the claims. INA expended $32,144.82

for attorneys fees, $2,337.47 for investigation, and $4,288.72 for court costs. The Equity Mutual and INA policies each contained a limit of $100,000 for death or bodily injury to one person and a limit of $300,000 for all deaths or injuries resulting from one occurrence. INA's property damage limit was $25,000 and Equity Mutual's $50,000. Equity Mutual and INA both admit that they provided coverage for Webster and its employee who was operating the tractor-trailer and that both insurance companies have to bear a part of the losses as a result of the collision.

The trial court found that since the policies of INA and Equity Mutual "contain the same or similar 'other insurance' clauses, the policies are considered and found to be mutually repugnant, and therefore, that said policies are equally applicable to the losses". The trial court determined that each company should bear one-half of the cost of the settlements for wrongful death and bodily injury and one-half of the defense of those claims and that Equity Mutual should have paid two-thirds of the property damage claims and two-thirds of the cost of defending that claim. It ruled that Equity Mutual should reimburse INA so that each company bear an equal amount of the settlements and expenses due to the claims for wrongful death and bodily injury and so that Equity Mutual would bear two-thirds of the property damage loss and expense.

Equity Mutual contends that as it insured the operator, and INA the owner of the vehicles, its insurance is "excess" and INA's is "primary" and that Equity Mutual should only be responsible for the bodily injury liability and wrongful death losses in excess of INA's $300,000 limit, and for none of the property damage loss. Equity Mutual also claims that it should not have to reimburse INA for any of INA's expenses in defending the claims.

■ Equity Mutual cites numerous cases such as *United States Fidelity & Guaranty Company v. Safeco Insurance Company of America*, 522 S.W.2d 809 (Mo. banc 1975),

contending that there is a "general rule" in Missouri that places primary liability on the insurer of the owner of an automobile rather than insurer of the operator. That rule appears to be often applied when courts are "dealing with the standard automobile liability policy". 522 S.W.2d at 821. We are not here dealing with two standard automobile liability policies. The INA policy was issued, contemplating that Ryder would rent vehicles to others under rental agreements. We think it more appropriate to decide the question in accordance with the provisions of the applicable policies rather than upon any general rule. Whether the owner's insurance is primary depends on the policy provisions and the circumstances of the collision. *Arditi v. Massachusetts Bonding & Insurance Company*, 315 S.W.2d 736, 743 (Mo. 1958).

INA and the trial court put great emphasis on *Arditi*. There the two insurance policies each contained "other insurance" clauses which purported to make each policy excess. The court determined that those provisions were indistinguishable in meaning and intent, were "mutually repugnant", and should be disregarded and the loss apportioned between the two companies. 315 S.W.2d at 743. Our decision is based upon the provisions of policies which are different. *Arditi* held that resort should be made to the specific provisions of the policies involved and we do so here.

The Equity Mutual policy provides:

"6. *Other Insurance*: The insurance afforded by this policy is primary insurance, except when stated to apply in excess of or contingent upon the absence of other insurance. When this insurance is primary and the insured has other insurance which is stated to be applicable to the loss on an excess or contingent basis, the amount of the company's liability under this policy shall not be reduced by the existence of such other insurance.

When both this insurance and other insurance apply to the loss on the same basis, whether primary, excess or contingent, the company shall not be liable under this policy for a greater proportion of the loss than that stated in the applicable contribution provision below:

(a) *Contribution by Equal Shares.* If all of such other valid and collectible insurance provides for contribution by equal shares, the company shall not be liable for a greater proportion of such loss than would be payable if each insurer contributes an equal share until the share of each insurer equals the lowest applicable limit of liability under any one policy or the full amount of the loss is paid, and with respect to any amount of loss not so paid the remaining insurers then continue to contribute equal shares of the remaining amount of the loss until each such insurer has paid its limit in full or the full amount of the loss is paid.

(b) *Contribution by Limits.* If any of such other insurance does not provide for contribution by equal shares, the company shall not be liable for a greater proportion of such loss than the applicable limit of liability under this policy for such loss bears to the total applicable limit of liability of all valid and collectible insurance against such loss."

That policy further provides:

"*Excess Insurance—Hired and Non-Owned Automobiles*

With respect to a hired automobile or a non-owned automobile, this insurance shall be excess insurance over any other valid and collectible insurance available to the insured."

A "hired automobile" is defined in that policy as one not owned by the named insured, a partner, executive officer, employee or agent of it, and "which is used under contract in behalf of, or loaned to, the named insured". According the language in the policy its plain meaning [*City of Palmyra v. Western Casualty and Surety Co.*, 477 S.W.2d 428, 432 (Mo.App. 1972)], we believe the vehicles here were "hired". We do not believe they would be considered as "owned" by Webster. See *State Farm Mutual Automobile Insurance Company v. MFA Mutual Insurance Company*, 485 S.W.2d 397 (Mo. banc 1972). In *Powell v.*

*Home Indemnity Company*, 343 F.2d 856, 859 (8th Cir. 1965), "owner" as applied to motor vehicles was said to include "estates less than absolute". Whether or not that case correctly states the Missouri law we need not decide as the "long term lease" there is not present here.

INA's policy provides:

"7. Other Insurance

Under Coverages A, B, C, D and E, the insurance afforded by this policy is primary insurance, except when stated to apply in excess of or contingent upon the absence of other insurance. When this insurance is primary and the Insured has other insurance which is stated to be applicable to the loss on an excess or contingent basis, the amount of INA's liability under this policy shall not be reduced by the existence of such other insurance. With respect to a hired automobile or a non-owned automobile, this insurance shall be excess insurance over any other valid and collectible insurance available to the Insured. With respect to any automobile, as defined in the policy, or equipment or machinery owned by the Named Insured, which is leased/rented to any one or more persons or organizations under an agreement whereby the lessee/rentee agrees to provide bodily injury liability insurance and property damage liability insurance for the Named Insured, the insurance under this policy shall be excess insurance over any other valid and collectible insurance; no insurance of any nature is afforded to any such lessee/rentee, or agent or employee thereof, or to any person or organization legally responsible for use by such lessee/rentee, agent or employee.

When both this insurance and other insurance apply to the loss on the same basis, whether primary, excess or contingent, INA shall not be liable under this policy for a greater proportion of the loss than stated in the applicable contribution provision below:

(a) Contribution by Equal Shares. If all of such other valid and collectible insurance provides for contribution by equal shares, INA shall not be liable for a greater proportion of such loss than would be payable if each insurer contributes an equal share until the share of each insurer equals the lowest applicable limit of liability under any one policy or the full amount of the loss is paid, and with respect to any amount of loss not so paid the remaining insurers than [sic] continue to contribute equal shares of the remaining amount of the loss until each insurer has paid its limit in full or the full amount of the loss is paid.

(b) Contribution by Limits. If any of such other insurance does not provide for contribution by equal shares, INA shall not be liable for a greater proportion of such loss than the applicable limit of liability under this policy for such loss bears to the total applicable limit of liability of all valid and collectible insurance against such loss."

INA's policy further provides by endorsement:

"It is agreed that such automobile liability insurance as is afforded by the policy, including the Exclusions and Conditions applicable thereto, for bodily injury liability under Coverage A and for property damage liability under Coverage B applies to any one or more persons or organizations leasing/renting an automobile from any named insured subject to the following provisions:

\* \* \* \* \* \*

2. Unless the lease/rental agreement states in writing that such lessee/renter is to be provided with automobile liability insurance by such named insured, no insurance shall be afforded under this policy to such lessee/renter, his agents or employees, or to any persons or organization legally responsible for the use of the vehicle so leased/rented by such lessee/renter.

\* \* \* \* \* \*

4. The insurance afforded to such lessee/renter applies only to the mainte-

nance or use of (1) the automobile so leased/rented and (2) trailers owned by the lessee/renter or for which he is legally liable, but only while such trailer is attached to the leased/rented automobile referred to in part (1) of this paragraph. The insurance under part (2) of this paragraph is excess over any other valid and collectible insurance the lessee/renter may have whether such coverage is on a primary, excess, or contingent basis."

Equity Mutual's policy in paragraph 6 quoted above states that the policy is primary insurance, "except when stated to apply in excess". Thereafter it clearly states that it is excess insurance with respect to vehicles hired by its named insured. Under these facts we find no provision in the INA policy repugnant to Equity Mutual's language making its coverage excess or which would purport to make INA's policy excess. That insurance policies contain like excess provisions does not require that the provisions are "mutually repugnant", because to make that determination the provisions must be applied to the factual situation involved. *Fidelity and Casualty Company of New York v. Western Casualty and Surety Company*, 337 S.W.2d 566, 577 (Mo. App. 1960). Paragraph 7—Other Insurance, quoted above from the INA policy, states that it is primary "except when stated to apply in excess". In the situation before us, the policy contains no provision stating that it is excess. That paragraph also contemplates that an insured may have other insurance which is excess and if so, the amount of INA's policy "shall not be reduced by the existence of such other insurance".

Paragraph 7 provides that INA's policy shall be excess as to hired or non-owned automobiles. INA does not contend, correctly we believe, that this sentence is applicable here. A "hired automobile" under the policy must be "used under contract in behalf of, or loaned to, the Named Insured". Here the vehicles were "hired" as to Webster, not the named insured, Ryder. Therefore, the reference to "hired automo-

bile" in paragraph 7 does not refer to this situation, and make the coverage of INA excess. Surprisingly, "non-owned automobile" is not defined in the policy; however, we believe it refers to an automobile not owned by the named insured as does "hired automobile" in the same sentence. Coverage is admittedly provided to Webster because it was operating an "owned automobile" of the named insured, Ryder, with permission under the policy. We do not believe the same vehicle should be considered "owned" in one provision of the policy and "non-owned" in another, unless the policy clearly so provides.

Paragraph 7 has an excess clause applicable when the "Named Insured" enters into a lease and the "lessee/rentee agrees to provide bodily injury liability insurance and property damage liability insurance for the Named Insured". However, that sentence is limited to providing excess insurance to the named insured alone as in the last clause it states that no insurance is afforded to the rentee or its agent or employee. There is no question here as to providing insurance to the named insured and Webster did not agree to furnish insurance to the tractor. The balance of paragraph 7, providing for "contribution" between companies, only covers those situations when that policy and other insurance "apply to the loss on the same basis, whether primary, excess or contingent". As the policies do not provide coverage on the same basis, those paragraphs are not applicable.

Paragraph 4 of the endorsement to INA's policy referred to above provides that its insurance shall be excess on trailers "owned by the lessee/renter or for which he is legally liable, but only while such trailer is attached to the leased/rented automobile". This clause could make INA's policy excess on the trailer, but not the tractor. It apparently contemplates a situation where the trailer may be one not owned by Ryder, as where the tractor is rented from Ryder but the trailer is not. Even if INA's policy is excess as to liability claims relating to the trailer, there is no showing before us that there was any negligence attributed to the

use or operation of the trailer, instead of the tractor, which led to the collision so as to make this provision applicable. See *Brady v. American Insurance Company*, 198 So.2d 907, 911 (La.App. 1967). This "excess" provision does not then apply to the present situation.

No other provision in INA's policy is claimed to make it excess or to be contrary to Equity Mutual's intent to be excess, and under these facts we find nothing in the policies which are "mutually repugnant" on the question of primary and excess coverage. According to the terms of the policies, we determine that INA's insurance coverage is primary and Equity Mutual's is excess.

We see no basis here for the primary insurance carrier to recover expenses and costs of defense from the excess carrier. Neither denied coverage and both recognized their obligation to pay at least a part of the losses. They cooperated in settling the claims and each expended sums for defense. The trial court apparently awarded those expenses to INA solely on the basis that claims were to be shared proportionally based on the policy limits and that expenses of defense should be likewise shared. No other justification is urged or appears. Therefore, that determination must also be reversed.

That part of the judgment in favor of Grain Dealers Mutual Insurance Company is affirmed. The portions of the judgment determining that Equity Mutual is obligated to make payment to INA is reversed and the cause is remanded for the entry of a judgment providing that Equity Mutual recover from INA $112,053.25.

BILLINGS, P. J., and MAUS, J., concur.