**PLANET INSURANCE COMPANY,**
Appellant,

v.

**Dan ERTZ and the Ertz Agency,
Inc., Respondents.**

No. WD 50774.

Missouri Court of Appeals,
Western District.

March 19, 1996.

Motion for Rehearing and/or Transfer to
Supreme Court Denied April 30, 1996.

Edward E. Schmitt, Donald G. Scott, Armstrong, Teasdale, Schlafly & Davis, Kansas City, for appellant.

David P. Madden, Fisher, Patterson, Sayler & Smith, L.L.P., Overland Park, Kansas, for respondent.

Before BERREY, P.J., and ULRICH and ELLIS, JJ.

ULRICH, Judge.

Planet Insurance Company (Planet) filed a declaratory judgment action to determine coverage under two excess liability insurance policies containing "other insurance" clauses. One of the policies was issued by Planet to Dan Ertz and The Ertz Agency, Inc. (collectively Ertz), and the second policy was issued to Ertz by Northwestern National Insurance Company (Northwestern National). The trial court found that the "Planet Insurance Company's escape clause is repugnant to Northwestern National's other insurance clause" and by summary judgment ordered Planet and Northwestern National to pay pro rata liability claims asserted against Ertz by Western Auto that exceed the primary liability coverage provided by the errors and omissions insurance policy issued by Transamerica Insurance Company (Transamerica). Planet appeals the declaratory judgment in favor of Ertz.

The judgment is affirmed.

## I.

### Background

The underlying action arose when Western Auto Supply Company (Western Auto) and others sued Ertz and others in the United States District Court for the Western District of Missouri. The lawsuit asserted claims for liability relating to the creation and funding of a bonus deferral plan for certain members of Western Auto management.

Dan Ertz, the owner of the Ertz Agency, was a general agent of Northwestern. When Western Auto asserted its claims against Ertz, Dan Ertz had in effect professional liability insurance coverage under three policies:

| Carrier | Coverage Type | Policy Limits |
|---|---|---|
| Transamerica | Errors and Omissions | $3,000,000 |
| Northwestern National | Commercial Umbrella Liability | $2,000,000 |
| Planet | Excess | $2,000,000 |

Western Auto's claims in the underlying lawsuit were expected to exceed the aggregate limits of all three policies. Having similar attributes, both the Northwestern National and Planet policies were types of excess poli-

cies. Both listed the same Transamerica policy as the underlying insurance. Both the Northwestern National and the Planet policies contained "other insurance" clauses in their conditions sections. The Northwestern National policy provided:

**9. Other Insurance:**

The insurance provided by this policy is excess over:

a. The "underlying insurance"; and

b. Any other collectible insurance.

This does not apply to insurance written specifically to be excess to this policy.

The Planet policy provided:

**II. OTHER INSURANCE:**

If the INSURED has other insurance against the loss covered by this Policy, this Policy shall be excess over any other valid and collectible insurance and shall then apply only in the amount by which the applicable Limit of Liability of this Policy exceeds the sum of the applicable Limit of Liability of all such other insurance.

Planet asserted that its "other insurance" clause contained an escape clause that eliminated its liability. For that reason, Planet denied coverage to Ertz for the underlying Western Auto litigation. Planet then brought the declaratory judgment action now on appeal. In that action, Planet sought a declaration that it owed no coverage or indemnity to Ertz by virtue of its "other insurance" clause. Entering declaratory judgment for Ertz, the trial court found the "other insurance" clauses in the Northwestern National and Planet policies mutually repugnant. The court further found Northwestern National and Planet obligated on a pro rata basis to indemnify Ertz for any loss in excess of the Transamerica policy.

## II

### A. Overview of "Other Insurance" Clauses

■ This appeal involves the "other insurance" clauses in the Northwestern National and Planet policies. "Other insurance" clauses are provisions inserted in insurance policies to vary or limit the insurer's liability when additional, concurrent insurance exists to cover the same loss. Three basic types of

"other insurance" clauses are utilized: *pro rata clauses* that limit the insurer's liability to a proportion of the total loss; *excess clauses* that make the policy excess or payable after other policies; and *escape clauses* that allow the insurer to escape all liability. A particular "other insurance" clause may contain attributes of the several basic types. Thomas B. Alleman, *Resolving the "Other Insurance" Dilemma: Ordering Disputes Among Primary and Excess Policies,* 30 Kan.L.Rev. 75, 76–77 (1981).

The Northwestern National "other insurance" clause contains excess clauses making that policy excess to the underlying insurance and excess to any other collectible insurance. The "other insurance" provision in the Planet policy combines excess-escape features. Under its "other insurance" clause, the Planet policy is excess over any other valid and collectible insurance only to the extent that Planet's liability limit exceeds the sum of liability limits of all other valid insurance.

### B. Excess Insurance Distinguished

Excess insurance policies may contain "other insurance" clauses that apply when more than one excess insurance policy covers the same loss. Sharing overlapping functions, excess insurance and "other insurance" clauses are sometimes confused with each other. Rowland H. Long, 3 *The Law of Liability Insurance* § 22.03 (1995).

■ Primary insurance first pays toward the loss. Excess insurance then pays after the limit of the primary insurance is exhausted. A separate class of policies is expressly written to provide excess coverage. Designed to cover catastrophic losses, excess insurance policies begin coverage when the underlying coverage ends. Excess insurance can be classified by type: **"true excess"** or **"umbrella"** and by form: **"following form"** and **"stand alone."** A **true excess policy** provides coverage above a primary policy for specific risks. An **umbrella policy** provides coverage over more than one policy, and may cover risks not covered by the primary policy. A **following form policy** has the same

terms and conditions as the primary policy, but has a different liability limit. A **stand alone policy** has its own terms and conditions that may vary from the primary policy. *Id.*

In this case, Transamerica provides primary insurance coverage. Northwestern National and Planet provide excess insurance covering the same loss. Review of the entire Northwestern National policy discloses that it exemplifies an umbrella, stand alone policy. The Planet policy contains a clause that it "is warranted to follow the exact terms and conditions of the Transamerica [policy] except with respect to the limit of liability and premium," and it is a true excess, following form policy.

### C. Development of "Other Insurance" Law

"Other insurance" clauses create dilemmas for courts. Giving effect to conflicting "other insurance" clauses may involve circular reasoning and produce illogical results. The result may provide a windfall to one insurer, vary depending on which "other insurance" clause is read first, or leave the insured without the insurance for which it contracted.

Early theories for resolving conflicting "other insurance" clauses proved unsuccessful. Under the ***prior-in-time theory,*** courts imposed full liability on the insurer whose policy had the earlier effective date. The ***primary tortfeasor theory*** placed liability on the insurer whose policy covered a named insured, as opposed to an additional insured, who was the tortfeasor. Under the ***specificity theory,*** courts enforced the "other insurance" clause that contained the more specific restriction. The ***total-insuring-intent theory*** allocated coverages on risk assumed by the insurers on the basis of the premiums charged and the primary function of each policy. *Alleman, supra,* at 77–78.

Three landmark cases developed new methods for dealing with conflicting "other insurance" clauses. *Oregon Automobile Insurance Company v. United States Fidelity & Guaranty Company,* 195 F.2d 958, 959 (9th Cir.1952), involved two insurance policies with "other insurance" clauses having pro rata, excess, and escape features. The court

in *Oregon Automobile* found the "other insurance" clauses indistinguishable in meaning and intent, declared them mutually repugnant, disregarded them, and prorated the loss between the two insurers. *Id.* at 960.

The Texas case, *Hardware Dealers Mutual Fire Insurance Company v. Farmers Insurance Exchange,* 444 S.W.2d 583, 589–90 (Tex.1969), dealt with an excess clause and an escape clause in two primary insurance policies covering the same loss. Rejecting previous theories and enunciating a new rule, the *Hardware Dealers* court found the two "other insurance" clauses conflicting when subjected to a reasonable construction considered from the insured's point of view. *Id.* at 589. The court stressed that the insured had coverage from either one of two policies but for the other. *Id.* That is, one policy minus its escape clause covered the insured; the other policy minus its excess clause covered the insured. *Id.* at 590. The *Hardware Dealers* court declared the conflicting "other insurance" clauses repugnant, ignored two conflicting provisions, and ordered the concurrent insurers to prorate the loss. *Id.* at 589–90.

*Lamb–Weston, Inc. v. Oregon Automobile Insurance Company,* 219 Or. 110, 341 P.2d 110, 119 (Or.1959), declared that whenever "other insurance" clauses conflict—regardless of their nature as pro rata, excess, or escape—those clauses are repugnant, and each should be rejected in toto. *Lamb–Weston* represents a minority view that has not been universally followed in Missouri.

### D. Missouri Law On "Other Insurance" Clauses

Missouri case law on "other insurance" clauses provides no clear means of resolving the "other insurance" dilemma. One line of cases disfavors "other insurance" clauses. *Arditi v. Massachusetts Bonding & Insurance Co.,* 315 S.W.2d 736, 743 (Mo.1958); *Crown Center Redevelopment Corp. v. Occidental Fire & Casualty Co.,* 716 S.W.2d 348, 355, 362 (Mo.App.1986). Another line of cases gives effect to "other insurance" clauses. *State Farm Mut. Auto. Ins. Co. v. West-*

*ern Casualty & Surety Co.*, 477 S.W.2d 421, 427 (Mo. banc 1972).

In *Arditi v. Massachusetts Bonding & Insurance Co.*, 315 S.W.2d 736 (Mo.1958), the Missouri Supreme Court followed the *Oregon Automobile* rule in determining that the excess clauses in two concurrent primary insurance policies were indistinguishable in meaning and intent and that they should be disregarded as being "mutually repugnant." *Id.* at 743. The Court adopted the position that all "other insurance" clauses should be ignored when they are mutually repugnant. *Id.* In *Crown Center Redevelopment Corp. v. Occidental Fire & Casualty Co.*, 716 S.W.2d 348 (Mo.App.1986), the Western District, relying on both *Arditi* and *Hardware Dealers*, disregarded the excess "other insurance" clauses in two lines of primary and excess policies as mutually repugnant. *Id.* at 355–56.

In *State Farm Mutual Automobile Insurance Co. v. Western Casualty and Surety Co.*, 477 S.W.2d 421 (Mo. Banc 1972), the Missouri Supreme Court rejected the *Arditi* analysis and the *Oregon Automobile* rule that two conflicting indistinguishable clauses should be ignored as mutually repugnant when the competing "other insurance" clauses are of dissimilar types. *Id.* at 427. The Court determined that where a "no liability" [escape clause] expressly provides that its insurance does not apply to loss covered by "other valid and collectible insurance, whether primary, excessive or contingent," the insurer will be absolved from liability in a case. *Id.* The rationale for this conclusion, the Court said, is that an insurer whose policy contains a "no liability" clause anticipated the possibility of the existence of an "excess" clause in the policy of a customer and expressly contracted against liability in that situation. *Id.* Consequently, the specific escape clause in the Western Casualty policy prevailed over a general excess clause in another policy. (*Western Casualty* is discussed later in additional detail.)

Thus, study of the Missouri cases on "other insurance" clauses suggests that similar types of clauses are analyzed for repugnancy and conflicts, and dissimilar types of clauses are analyzed for specificity.

## III

### A. Argument

Planet argues error in the trial court's finding that the "other insurance" clause in Planet's policy and the "other insurance" clause in Northwestern National's policy are mutually repugnant and in apportioning the loss between the carriers. It relies on *Western Casualty*, 477 S.W.2d at 427, for the proposition that its "other insurance" clause allows it to escape liability. Planet insists that *Western Casualty* is the controlling authority because it specifically dealt with competing escape and excess clauses and because it rejected the *Arditi* analysis.

### B. Discussion

■ In *Western Casualty*, the Missouri Supreme Court determined the applicability of two *primary insurance polices* covering the same loss based on the specificity of the respective "other insurance" clauses. *Id.* The "other insurance" clause in the State Farm policy provided that non-owned automobile coverage "shall be excess over other collectible insurance." *Id. at* 426. The Western Casualty primary policy contained the following "other insurance" escape clause:

> If there is other valid and collectible insurance, whether primary, excess or contingent, available to the garage customer and the limits of such insurance are sufficient to pay damages up to the amount of the applicable financial responsibility limit, no damages are collectible under this policy.

The Western Casualty policy also contained a provision explaining that the "other insurance" clause was in consideration for the reduced premiums. *Id.*

The Court found that the specific escape clause in the Western Casualty policy should prevail over the general excess clause in the State Farm primary policy. In examining the two clauses, the Court was persuaded by language in the Western Casualty escape clause expressly providing no liability for any loss covered by "other valid and collectible insurance, whether primary, excess, or contingent." *Id.* at 427. The Court was also

influenced by the statement about the reduced premiums and apparently relied on the total-insuring-intent theory that allocates coverages on the risks assumed by insurers. In giving effect to the escape clause of one primary policy over the excess clause of the second primary policy, the Court reasoned that the insurer whose primary policy contained the specific escape clause anticipated the possibility of an excess clause in another primary policy and expressly contracted against liability in that situation. *Id.* A further important consideration for the Court was that the State Farm policy limits were sufficient to cover the loss. As a result, Western Casualty was held not liable.

Contrary to Planet's argument, its escape clause fails to prevail under the analysis of *Western Casualty.* Unlike *Western Casualty,* where two primary policies were compared, the policies compared here are an umbrella, stand alone policy and a true excess policy. Additionally, the Planet "other insurance" clause differed from the one in *Western Casualty* in the following respects. The Planet "other insurance" clause did not specify the type of other insurance to which it referred; it lacked the reference to "primary, excess, or contingent" other insurance that appeared in the Western Casualty policy. However, the language in Planet's policy that "this Policy shall be excess over any other valid and collectible insurance" may arguably be read to include more than the "primary" insurance. Unlike the Western Casualty clause, the Planet clause made no reference to reduced premiums. The Planet premium was not reduced. The premiums for the Planet and the Northwestern National policies were in the same range of $330 to $400. Additionally, the Planet "other insurance" clause allowed Planet to escape liability if the sum of the limits of the other valid and collectible policies exceeded Planet's limits. The Western Casualty policy, in contrast, allowed escape if the other insurer's limit satisfied the loss.

In *Fremont Indem. v. New England Reinsurance,* 168 Ariz. 476, 815 P.2d 403 (1991), the Arizona Supreme Court considered a similar dilemma. The Court found that two competing primary insurance policies, when read in their entirety, contained mutually repugnant "other insurance" clauses. *Id.,* 815 P.2d at 404. The Court applied the rule in Arizona that where two policies cover the same occurrence and both contain "other insurance" clauses, the other insurance provisions are mutually repugnant and must be disregarded, each insurer being liable for a pro rata share of the settlement or judgment. *Id.* at 405. The Court expressed that "if a court were to give literal effect to each of the other insurance clauses, each policy would be cancelled out." *Id.* "We cannot solve the circular riddle caused by conflicting clauses by picking up one policy, and reading it with the result which would be opposite to that reached if the other policy were first in order." *Id.* The escape clause in Fremont Indemnity Company's policy stated:

> [W]ith respect to professional services rendered prior to the effective date of this Policy, the insurance hereunder shall apply only as excess insurance over any other valid and collectible insurance and shall then apply only in the amount by which the applicable limit of liability of this Policy exceeds the sum of the applicable limit of liability of all such other insurance.

*Id.* at 406.

The Court determined that while the Fremont clause was an escape clause, the New England policy contained an excess clause. The Court reasoned,

> Although a combined escape-excess clause [Fremont] and a true excess clause [New England] may not automatically cancel themselves out, we believe such clauses are sufficiently repugnant to require proration.... The purpose of each clause is to render coverage secondary to that of any other policy and in the event such "other insurance" covers the entire loss, eliminate liability altogether. In terms of effect, then, Fremont's composite escape-excess clause and New England's true excess clause are indistinguishable. The combined Escape-excess clause simply expresses what the true excess clause implies—no coverage if other insurance provides adequate protection, but excess coverage if other insurance is insufficient.

*Id.* at 407. Noting the "growing weight of authority" that construes escape clauses mutually repugnant to general excess clauses, the court held that both policies were obligated to pay a pro rata share of the settlement pursuant to the mutual repugnancy rules established in Arizona. *Id.* at 408.

The trial court's application of the repugnancy theory and the proration ordered is consistent with the holdings of *Arditi,* 315 S.W.2d at 742–43, and *Crown Center,* 716 S.W.2d at 361–62, and is consistent with the reasoning in *Fremont Indem.,* 815 P.2d 403 at 403–07. The repugnancy of the two "other insurance" clauses becomes evident from attempts to give effect to both clauses. The process would involve circular reasoning. For example, if the Planet excess-escape clause were read first, no other insurance would exist for the purpose of the Northwestern National excess clause. If the clauses were read in reverse order, other insurance exists for purposes of both clauses. Allowing Planet to escape liability would produce illogical results: Planet would secure a windfall, and Ertz would be left without $2,000,000 worth of insurance for which it paid premiums.[1]

### C. Conclusion

The trial court's finding that the Planet and the Northwestern National "other insurance" clauses are repugnant to each other and his order directing Planet and Northwestern National to pay perfected pro rata liability claims asserted against Ertz by Western Auto that exceed the primary liability coverage provided by the errors and omissions insurance policy issued by Transamerica is affirmed.

All concur.

---

1. The facts of *Fremont Indemnity Co. v. New England Reinsurance Co.,* 168 Ariz. 476, 815 P.2d 403 (Ariz.1991), are on point with those here. *Fremont* concerned two professional liability policies providing concurrent coverage and having other insurance clauses. One policy contained an excess clause; the other contained an excess-escape clause with language essentially identical to that in the Planet policy. The Arizona appellate court found the clauses sufficiently repugnant and required proration. *Id.* 815 P.2d at 407–08.