**FARM BUREAU TOWN & COUNTRY INSURANCE COMPANY OF MISSOURI, Appellant,**

v.

**AMERICAN ALTERNATIVE INSURANCE CORPORATION, Respondent.**

**No. WD 73046.**

Missouri Court of Appeals, Western District.

June 14, 2011.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 2, 2011.

Application for Transfer Denied Oct. 4, 2011.

Michael J. Schmid, Jefferson City, MO, for Appellant.

Kent L. Brown, Jefferson City, MO, for Respondent

Before: VICTOR C. HOWARD, P.J., THOMAS H. NEWTON, and GARY D. WITT, JJ.

THOMAS H. NEWTON, Judge.

Farm Bureau Town & Country Insurance Company (Farm Bureau) appeals the trial court's judgment requiring it to reimburse funds paid by American Alternative Insurance Corporation (AAIC) to settle claims arising from a motor vehicle accident. We reverse the trial court's finding that the driver was not AAIC's insured at the time of the accident, find that each insurer has a *pro rata* liability for the underlying plaintiffs' claims, and enter judgment for Farm Bureau in the amount of $52,816.22.

## Factual and Procedural Background

Mr. Darren Day was a volunteer firefighter for the Boone County Fire Protection District (Fire District). On February 8, 2002, at 6:50 a.m., Mr. Day was at his girlfriend's house when a page was dispatched for volunteers to go to an accident scene. He proceeded to drive to the scene in his car, but while he was on the Highway 63 North on-ramp, the call was cancelled. Mr. Day decided to return to his girlfriend's house, but before he could exit Highway 63 North, "he lost control of his car, presumably because of black ice, slid across a median," and struck another vehicle. The vehicle's driver was killed and several other people were injured.

Mr. Day was insured under two policies issued by Farm Bureau to his parents. One of the Farm Bureau policies was a personal automobile insurance policy with a single liability coverage limit of $500,000. The second Farm Bureau policy was a personal/farm umbrella liability policy with a limit of $1,000,000. The Fire District had a commercial automobile insurance policy from AAIC with a coverage limit of $1,000,000. As a result of claims from the accident, Farm Bureau's automobile policy was exhausted to the policy limit of $500,000.

Farm Bureau paid an additional $186,132.43 from its umbrella policy. AAIC paid $80,500.00 for personal injury claims from the accident. Both Farm Bureau and AAIC reserved all rights to seek indemnity and/or contribution from the other. Farm Bureau subsequently filed a petition against AAIC seeking indemnity/contribution. It contended the liability payments it made under the umbrella poli-cy were AAIC's responsibility, or, in the alternative, that both insurers shared a *pro rata* responsibility for the sums. AAIC filed counterclaims for reimbursement and unjust enrichment, contending Farm Bureau was obligated to pay AAIC the $80,500 it had paid out under the Fire District's policy.

The case was tried on stipulated facts. The trial court entered judgment in favor of AAIC for $80,500.[1] Its findings of fact incorporated the joint stipulation by reference. In its conclusions of law, the trial court found that "when determining insurance coverage in this context, a master-servant relationship must be established." It held that AAIC's policy did not cover Mr. Day because he was not on Fire District business because he "did not reach" the scene and never came under the Fire District's control. It further concluded that even if Mr. Day was on Fire District business, he ceased being on Fire District business when the call was cancelled and he decided to return to the house, and even if he was on Fire District business, AAIC's policy did not cover him until Farm Bureau's umbrella policy was exhausted. Farm Bureau appeals.

## Standard of Review

■■■ We review a bench-tried case based on stipulated facts to determine whether the trial court drew the proper legal conclusion from the agreed facts. *Schroeder v. Horack*, 592 S.W.2d 742, 744 (Mo. banc 1979); *see also Bank of Belton v. Bogar Farms, Inc.*, 154 S.W.3d 518, 520 (Mo.App. W.D.2005). Our review is thus to "address the legal consequences of the facts before us." *Schroeder*, 592 S.W.2d at

1. The trial court entered judgment on July 29, 2010, in AAIC's favor for $80,500. A second judgment in AAIC's favor for $80,500 was entered August 5th. Farm Bureau moved for the trial court to amend its judgment by declaring the prior two judgments null and void, and to enter a proposed amended judgment, the form of which was agreed to by the parties. The trial court entered the amended judgment in AAIC's favor for $80,500 on September 3, 2010.

744. Because an insurance policy is a contract, questions of its interpretation are likewise questions of law. *Heringer v. Am. Family Mut. Ins. Co.*, 140 S.W.3d 100, 102 (Mo.App. W.D.2004). If the parties do not dispute the underlying facts, the application of the insurance contract is also a question of law. *Crossman v. Yacubovich*, 290 S.W.3d 775, 778 (Mo.App. E.D. 2009).[2]

## Legal Analysis

Farm Bureau raises three points on appeal. It first contends Mr. Day was an insured under AAIC's policy. Second, it argues that AAIC was the primary insurer and Farm Bureau was not liable as an excess insurer. Finally, it contends in the alternative that both insurers were responsible for a *pro rata* share. We thus address "the perennial issue in which a particular loss may be covered by more than one insurance policy and ... each insurer disclaims liability on the ground that 'other insurance' is available to cover the loss." *See State Farm Mut. Auto. Ins. Co. v. Univ. Underwriters Ins. Co.*, 594 S.W.2d 950, 952–53 (Mo.App. E.D.1980).

In the first point, Farm Bureau argues that Mr. Day was an "insured" under the AAIC policy by analogy to worker's compensation law and the doctrine of *respondeat superior*. However, to determine whether an insurance policy provides coverage, we look to the insurance contract itself. *Maryland Cas. Co. v.*

*Huger*, 728 S.W.2d 574, 578–79 (Mo.App. E.D.1987). While the trial court found that it needed to look to the law of "a master-servant relationship," its reliance on *Woods v. Kelley* for such a proposition was misplaced. *See* 948 S.W.2d 634, 637 (Mo.App. W.D.1997). *Woods* looks to the law of *respondeat superior* to determine whether a volunteer was a public employee pursuant to a statute waiving sovereign immunity. *Woods*, 948 S.W.2d at 637. This concern is distinct from the present issue: the interpretation of a contract for insurance.

Because insurance coverage is a matter of contract, absent a statute or public policy that requires coverage, we enforce an insurance policy as written. *Heringer*, 140 S.W.3d at 102–03. "[A]s with other consensual undertakings, it must be given effect according to the plain terms of the agreement, consonant with the reasonable expectations, objectives and the intent of the parties." *State Farm*, 594 S.W.2d at 953–54 (internal citation omitted). If the language used in the policy and the policy definitions reveals the intent of the parties, we must interpret the policy by that intent. *Id.* at 954. If the policy is unambiguous, we may not distort the language to create an ambiguity or to force a particular interpretation. *Id.*

AAIC's commercial auto policy provides in section A.1. that "insureds" are:

a. You for any covered "auto"

---

**2.** AAIC relies on *Maryland Casualty Company v. Huger*, 728 S.W.2d 574, 579 (Mo.App. E.D. 1987) to argue that whether the facts "fall within the parameters of the phrase [within the scope of one's respective duties] is a question of fact," and that we must therefore defer to the trial court's findings on this issue. *Maryland Casualty*, however, applies agency law to an issue of *respondeat superior* before it. The case on which it relies for the proposition that whether conduct falls within an employee's duties is a question of fact deals exclusively with a question of agency. *See Jordan v. Robert Half Pers. Agencies of Kansas City, Inc.*, 615 S.W.2d 574, 582 (Mo.App. W.D. 1981) ("The agency relationship is established when the credible facts, taken as a whole, disclose that a party is acting for or is representing another by the latter's authority."). While agency law informed *Maryland Casualty*'s analysis of the insurance policy at issue, the issue before us is one of contract, not of agency.

b. Anyone else while using with your permission a covered "auto" you own, hire or borrow except [various exceptions]

c. Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

The policy also carried an endorsement to its business auto coverage. The endorsement includes an addition to section A.1 above. The addition states:

VOLUNTEERS AND EMPLOYEES AS "INSUREDS"

Coverage A.1., WHO IS AN INSURED, is modified by the addition of paragraph d., as follows:

d. Any volunteer or employee of yours while using a covered "auto" you don't own, hire or borrow in your business or your personal affairs. Insurance provided by this extension is excess over any other insurance available to any volunteer or employee.

The policy states that "the words 'you' and 'your' refer to the Named Insured shown in the Declarations." The Declarations define the Named Insured to be the Fire District. Consequently, applying the definitions of "you" and "your," the endorsement addition adds to the definition of "insured":

d. Any volunteer or employee of [the Fire District's] while using a covered 'auto' [the Fire District does not] own, hire or borrow in [the Fire District's] business or [its] personal affairs.

The parties argue that resolution of AAIC's responsibility for coverage turns on whether Mr. Day was using his vehicle in the Fire District's "business affairs." ▮ To determine if Mr. Day was using his vehicle in the Fire District's "business affairs," we first look to the definitions provided within the policy. *See Heringer,* 140 S.W.3d at 103. The policy

itself does not define "business affairs." We thus examine the plain meaning of the phrase as it would have been understood by an ordinary person of average understanding when buying the policy. *Jones v. Mid–Century Ins. Co.,* 287 S.W.3d 687, 690 (Mo. banc 2009). If the language is ambiguous, we construe it against the insurer. *Heringer,* 140 S.W.3d at 102–03. "Language is ambiguous if, when viewed in the meaning that would ordinarily be understood by the lay people who bought the policy, it is reasonably open to different constructions." *Crossman,* 290 S.W.3d at 778 (citation and internal quotation marks omitted).

Farm Bureau principally contends that Mr. Day was acting in the Fire District's business affairs because an ordinary person would understand that responding to and returning from an emergency are within the "business" of the Fire District. AAIC principally argues that Mr. Day was not within the Fire District's business because he was not in the Fire District's control in that he responded to the call voluntarily and chose his route and vehicle.

We agree with Farm Bureau that Mr. Day was an "insured" under the Fire District's policy endorsement. First, the policy itself distinguishes between coverage for vehicles owned by the Fire District and "non-owned" vehicles. The endorsement then specifically adds coverage for a volunteer using a "non-owned" vehicle in the Fire District's business affairs. It is undisputed that volunteers sometimes responded to emergency calls in their own vehicles, and sometimes in Fire District vehicles. An ordinary person of average understanding purchasing the endorsement would have understood that this endorsement added coverage for volunteers driving their own vehicles to and from the scene of an emergency. In fact, we find it

somewhat strained to imagine alternative reasons for the endorsement.

Second, even if we were to read the endorsement to cover only volunteers responding to an emergency, the facts of this case would still fall within the definition of "insured." Absent the Fire District call, Mr. Day would not have been on Highway 63 North. Although the dispatch had been cancelled, Mr. Day had not yet changed his route to the scene when his accident occurred.

Third, there are strong public policy reasons to find in favor of coverage for emergency personnel responding to an accident. As Farm Bureau argues, denying coverage could have a detrimental effect on the urgency of emergency responders. While AAIC contends this policy rationale does not apply because the present issue is not whether an emergency responder was covered, but rather, which insurance company covered him, we find AAIC's distinction without effect here. The question of whether Mr. Day was acting within the Fire District's "business affairs" is answered without reference to any other policy.

Finally, even if we were to ignore the plain language of the policy and public policy, we would at most be left with an ambiguity. As noted, we construe ambiguous language against the insurer. *Heringer*, 140 S.W.3d at 102–03.

Consequently, we find that Mr. Day was using his vehicle in the Fire District's "business affairs," and was therefore an "insured" under AAIC's policy. Farm Bureau's first point is granted.

▮ In the second point, Farm Bureau argues AAIC was the primary insurer and Farm Bureau's umbrella policy, as excess insurance, was not required to share in AAIC's liability. It contends AAIC, rather than Farm Bureau, was required to pay the damages beyond Mr. Day's Farm Bureau exhausted auto policy.

The Farm Bureau umbrella policy provided that it would pay damages for which the insured "become[s] legally responsible due to PERSONAL INJURY or PROPERTY DAMAGE." It requires the insured to maintain underlying liability insurance and provides that it "pays only after the underlying limits, and any other primary insurance covering the claim, have been paid." "Primary insurance" is defined within the Farm Bureau policy as:

[A]ny insurance collectible by YOU which covers liability for PERSONAL INJURY or PROPERTY DAMAGE. This coverage applies only to DAMAGES in excess of the RETAINED LIMIT or UNDERLYING LIMITS or PRIMARY INSURANCE whichever applies.

The policy also includes an "other insurance" clause stating:

This insurance is excess of all other collectible insurance, even if not scheduled, except for insurance purchased exclusively to be excess over this policy itself. This does not apply to insurance purchased in excess of the sum of the PRIMARY INSURANCE limit and OUR liability limit.

Farm Bureau argues that AAIC's policy was primary insurance, and that because Farm Bureau's umbrella policy paid only after primary insurance was exhausted, it was not liable for the underlying plaintiffs' claims.

AAIC's commercial automobile policy covers the insured for "damages because of 'bodily injury' or 'property damage' to which this insurance applies." As discussed, coverage for Mr. Day would be through the endorsement specifically covering, "Any volunteer or employee of yours while using a covered 'auto' you don't own, hire or borrow in your business or your personal affairs." However, the AAIC policy specifically limits its coverage

for volunteers and for non-owned vehicles. The endorsement specifies that the "Insurance provided by this extension is excess over any other insurance available to any volunteer or employee." The policy itself also provides that "[f]or any covered 'auto' you own, this Coverage Form provides primary insurance. For any covered 'auto' you don't own, the insurance provided . . . is excess over any other collectible insurance."

By the policy's plain terms, we cannot find that AAIC contracted to provide primary insurance for a volunteer driving a non-owned vehicle. AAIC's endorsement specifically states that it is "excess over any other insurance available to any volunteer." The policy specifically states that its coverage is primary insurance for owned vehicles and excess insurance for non-owned vehicles. It is not disputed that the Fire District did not own Mr. Day's vehicle. Consequently, because AAIC's coverage of Mr. Day was excess insurance, Farm Bureau's second point is denied.

In the third point, Farm Bureau contends in the alternative that if AAIC was not the primary insurer, the trial court erred because both policies' "other insurance" clauses are mutually repugnant, thereby requiring them each to pay a *pro rata* share of the settlements under the mutually repugnant doctrine, and that the *pro rata* share of each insurer is half of the total settlement amount. AAIC argues that even if AAIC was required to share in payment, Farm Bureau's amount is miscalculated and in excess of the amount permitted by law.

Both policies contain other insurance clauses, provided above, which is a provision "inserted in insurance policies to vary or limit the insurer's liability when additional, concurrent insurance exists to cover the same loss." *See Planet Ins. Co. v. Ertz*, 920 S.W.2d 591, 593 (Mo.App.

W.D.1996). The doctrine of mutual repugnancy provides that when competing policies covering the same risk have similar "other insurance clauses," we disregard the clauses as "mutually repugnant" and require the insurers to share the loss. *Smith v. Wausau Underwriters Ins. Co.*, 977 S.W.2d 291, 294 (Mo.App. W.D.1998). The rationale for this rule is that if we applied both clauses, the insured would be left without coverage. *Id.* It also functions to avoid conferring a windfall on one insurer at the expense of the other. *Planet Ins. Co.*, 920 S.W.2d at 594.

We agree with Farm Bureau that the "other insurance" clauses are mutually repugnant. "The repugnancy of . . . two 'other insurance' clauses becomes evident from attempts to give effect to both." *Id.* at 597. Both Farm Bureau and AAIC's policies provide that their liability is excess over other collectible insurance. This means neither policy will pay unless the other has paid, leaving Mr. Day without the contracted coverage. *See id.* at 593. Consequently, Farm Bureau and AAIC are responsible for *pro rata* shares of the liability over Mr. Day's underlying personal automobile policy. The policies are "treated as if none of the policies had other insurance clauses" and the insurers are "liable to prorate in proportion to the amount of insurance provided by their respective policies." *Rader v. Johnson*, 910 S.W.2d 280, 285 (Mo.App. W.D.1995).

AAIC, however, further contends that section 537.610.2 limits the liability of the Fire District to $300,000 "for any one person in a single accident or occurrence" for negligent operation of a motor vehicle and that the proration between the insurers would not be fifty-fifty. The parties stipulated that the Fire District "is a public entity . . . protected by sovereign immunity from suit for damages above $300,000 per person (plus the statutory

adjustment), for claims arising from negligence in the operation of a motor vehicle." Farm Bureau, however, argues that because the Fire District purchased liability coverage to $1,000,000, it waived the limits of liability imposed by section 537.610.2.

 "Section 537.610.1 allows political subdivisions of the state to purchase liability insurance for tort claims and waives sovereign immunity 'only to the maximum amount of and only for the purposes covered by such policy of insurance' or self-insurance plan.'" *Kunzie v. City of Olivette*, 184 S.W.3d 570, 574 (Mo. banc 2006). If the entity "maintains insurance that covers these types of claims, then it will have waived its immunity under section 537.610 for the specific purpose of and to the extent of its insurance coverage." *Id.* This waiver through the purchase of insurance effects "an absolute and complete waiver of all immunities." *Id.* The insurance effects such waiver when, "the plaintiff's claim falls within the purposes covered by the defendant's policy." *Hummel v. St. Charles City R–3 School Dist.*, 114 S.W.3d 282, 284 (Mo.App. E.D.2003). Here, it was stipulated that "[a]s a result of the … accident … various claims were asserted against [Mr.] Day" and that the amounts were "reasonable and were necessary to settle the claims against [Mr.] Day." Consequently, the Fire District waived sovereign immunity to the limits of the AAIC policy.

It was stipulated that both policies at issue provided a maximum liability coverage of $1,000,000. The Farm Bureau and AAIC policies are each liable for an equal share of the underlying claims. Farm Bureau's umbrella policy paid $186,132.43 to settle the accident claims and AAIC paid $80,500.00, for a total settlement of $266,632.43. Each insurer was responsible for $133,316.22. Consequently, we find AAIC liable to Farm Bureau for $52,816.22. Farm Bureau's third point is granted.

## Conclusion

For the foregoing reasons, we reverse the trial court's judgment and enter judgment in favor of Farm Bureau for $52,816.22.

HOWARD, P.J., and WITT, J., concur.