# United States Court of Appeals
## For the Eighth Circuit

_____

No. 19-1184
_____

United States of America

*Plaintiff - Appellee*

v.

Mubarak Ahmed Hamed

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Missouri - Jefferson City

_____

Submitted: February 13, 2020
Filed: October 5, 2020

_____

Before SMITH, Chief Judge, COLLOTON and STRAS, Circuit Judges.

_____

STRAS, Circuit Judge.

This case requires us to determine what effect, if any, a guilty plea has on later denaturalization proceedings. In this case, the district court[1] ruled that Hamed was collaterally estopped from taking a position that was inconsistent with what he said

---

[1]The Honorable Brian C. Wimes, United States District Judge for the Western District of Missouri.

when he pleaded guilty.  Although we conclude that a different species of estoppel applies, we affirm.

## I.

Hamed, a native of Sudan, originally arrived in the United States in 1990 under a student visa.  He eventually became the chief executive officer of the Islamic American Relief Agency, which purportedly had humanitarian goals, including aiding the poor, feeding the hungry, and sheltering the orphaned.  The organization's actual activities, however, were not quite so noble.  It would send funds to Khalid Al-Sudanee, an individual with ties to terrorism, who would then transport the money into Iraq in violation of economic sanctions in place at the time.

While this illegal activity was ongoing, Hamed applied for naturalization.  In one form, he marked "no" in response to the question, "[h]ave you ever[] . . . knowingly committed any crime for which you have not been arrested?"  When later asked the same question during an in-person interview, he did not change his answer.

Although Hamed's naturalization application was approved in 2000, the truth soon came to light.  By 2001, the Department of the Treasury uncovered the illegal transfers into Iraq.  And then, in 2004, it announced that both Al-Sudanee and Hamed's agency were "Specifically Designated Global Terrorist[s]."  Six years later, Hamed finally pleaded guilty to violating and conspiring to violate the Iraq Sanctions from "March 1991, . . . until in or around May 2005," *see* 18 U.S.C. § 371; 50 U.S.C. §§ 1701–1706, and to misusing the organization's "tax-exempt status" and omitting "relevant, material information" from tax forms "as early as . . . 1997," *see* 26 U.S.C. § 7212(a).

Hamed's troubles were not over.  In 2018, eight years after pleading guilty and eighteen years after first becoming a citizen, the government commenced proceedings to denaturalize him.  The district court agreed with the government, in

response to a motion for judgment on the pleadings, that Hamed's failure to disclose his criminal activities called for denaturalization because it amounted to "concealment of a material fact or . . . willful misrepresentation." 8 U.S.C. § 1451(a).

## II.

We review the district court's decision de novo. *Clemons v. Crawford*, 585 F.3d 1119, 1124 (8th Cir. 2009). Judgment on the pleadings was appropriate if, "view[ing] all facts pleaded by the nonmoving party as true and grant[ing] all reasonable inferences in favor of that party[,] . . . no material issue of fact remains to be resolved and the movant is entitled to judgment as a matter of law." *Id.* (first and second alterations in original) (internal quotation marks and citation omitted).

## A.

The government's reason for seeking denaturalization was simple enough. Once it discovered that Hamed "procured" naturalization "by conceal[ing]" or "willful[ly] misrepresent[ing]" his criminal activity, it had a statutory "duty" to seek revocation. 8 U.S.C. § 1451(a). The complaint, as relevant here, alleged that (1) Hamed "misrepresented and concealed" his criminal activity "throughout [the] naturalization proceedings"; (2) the misrepresentation and concealment was "willful"; (3) his criminal history was "material"; and (4) Hamed "procured his naturalization" through the "misrepresentation and concealment." *See United States v. Hirani*, 824 F.3d 741, 748 (8th Cir. 2016).

Hamed's defense was also simple. In his view, he did "not deliberate[ly] or voluntar[ily]" misrepresent or conceal anything because he was unaware at the time that his actions were illegal. *See id.* at 747 (assuming without deciding that the omissions or misrepresentations had to be "deliberate and voluntary").

-3-

The district court sided with the government. Relying on the plea agreement and Hamed's admissions, the court concluded that the defense was unavailable under the doctrine of collateral estoppel. *See Total Petroleum, Inc. v. Davis*, 822 F.2d 734, 737 n.6 (8th Cir. 1987) (discussing different types of estoppel).

By relying so heavily on Hamed's earlier admissions, however, the district court may technically have been applying *judicial* estoppel, not *collateral* estoppel. *See, e.g.*, *id.*; *see also Thore v. Howe*, 466 F.3d 173, 185–87 (1st Cir. 2006) (applying judicial estoppel to the facts admitted during a guilty plea); *Lowery v. Stovall*, 92 F.3d 219, 224–25 (4th Cir. 1996) (same); *Mirando v. U.S. Dep't of Treasury*, 766 F.3d 540, 544–48 (6th Cir. 2014) (same). But even if the court mislabeled its analysis, our task is to examine the substance of its reasoning. *See Henry L. Firm v. Cuker Interactive, LLC*, 950 F.3d 528, 534 (8th Cir. 2020) ("Although the district court used the term judicial estoppel, it is plain that its reasoning and the record supports equitable estoppel."); *Bracewell v. U.S. Bank Nat'l Ass'n*, 748 F.3d 793, 796 (8th Cir. 2014) ("looking beyond the label" of equitable estoppel and analyzing promissory estoppel because the complaint alleged that theory "in substance"). And here, given the "close relationship to the directly contested issue of collateral estoppel[,] we may properly rely upon [judicial estoppel] as an alternative basis for affirmance." *Allen v. Zurich Ins. Co.*, 667 F.2d 1162, 1168 n.5 (4th Cir. 1982) (considering judicial estoppel, even if it was never raised).

B.

"[J]udicial estoppel protects the integrity of the judicial process" by preventing a party from taking a position in a legal proceeding that is inconsistent with one it took earlier, "simply because [its] interests have changed." *Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1047 (8th Cir. 2006) (quotation marks omitted). For example, a person may not "state[] facts under oath during . . . a trial" and then deny "those facts in a second suit," even if the parties are different. *Monterey Dev. Corp. v. Law.'s Title Ins. Corp.*, 4 F.3d 605, 609 (8th Cir. 1993). The doctrine, which

courts may "invoke[]" at their "discretion," *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001) (quotation marks omitted), applies when:

> First, a party's later position [is] clearly inconsistent with its earlier position. Second, . . . [a] party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled.[2] . . . [And third,] the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

*Stallings*, 447 F.3d at 1047 (quoting *New Hampshire*, 532 U.S. at 750–51).

"Here, the district court failed to apply the three factors," so "we will apply each [one] to determine if the district court abused its discretion." *Id.* at 1049; *see also Triple H Debris Removal, Inc. v. Companion Prop. & Cas. Ins. Co.*, 647 F.3d 780, 785 (8th Cir. 2011) (applying an abuse-of-discretion standard of review to the judicial-estoppel factors, even though the district court proceeded under a judicial-notice theory). The first is comparative: is Hamed's current position "clearly inconsistent" with the one from his criminal proceeding? *Jones v. Bob Evans Farms,*

---

[2]It is not clear whether the second factor just guides our analysis or is a prerequisite for applying judicial estoppel. *Compare Life Invs. Ins. Co. of Am. v. Corrado*, 804 F.3d 908, 914 (8th Cir. 2015) ("Although the doctrine of judicial estoppel has not developed an exhaustive list . . . factors courts should consider include: (1) that 'a party's later position must be clearly inconsistent with its earlier position,' (2) 'whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or second court was misled' . . . ." (quoting *New Hampshire*, 532 U.S. at 750)), *with Warner Bros. Ent. v. X One X Prods.*, 840 F.3d 971, 979 (8th Cir. 2016) ("Second, the party *must* have persuaded the court to accept the earlier position . . . ." (emphasis added)). In any event, the uncertainty makes no difference here because when Hamed pleaded guilty, the court accepted his admissions. *See infra.*

*Inc.*, 811 F.3d 1030, 1033 (8th Cir. 2016) (quoting *New Hampshire*, 532 U.S. at 750). It does not take much digging to conclude that the answer is "yes." When pleading guilty, Hamed repeatedly admitted that he "knowingly and willfully" committed the tax and sanctions-related crimes, which is inconsistent with his current position that at the time he had no clue that his actions were criminal. *See Lowery*, 92 F.3d at 224 (analyzing specific statements during the plea to determine whether judicial estoppel applied).

Digging a bit deeper into the record removes any doubt. During the plea colloquy, for example, Hamed admitted that,

> *beginning on or about March 1991*, and continuing until in or around May 2005, . . . [he] *knowingly and willfully* conspired, confederated and agreed to violate Executive Orders 12722 and 12724 and the Iraq Sanctions Regulations by transferring, attempting to transfer, and causing to be transferred, funds from the United States to Iraq . . . in violation of [various federal laws].

(Emphasis added). This admission is clearly inconsistent with his position now that the earliest he could have learned about the criminality of his actions was 2001, nearly a year after he became a naturalized citizen.

His argument that he had no idea what was in his tax forms fares no better. As part of the factual basis for his plea, he admitted to "*knowingly* fail[ing] to disclose the fact that he and [his organization] had provided funds for projects and persons in Iraq." (Emphasis added). He also acknowledged "fil[ing] or caus[ing] to be filed" tax returns for "each year 1997 through 2003." If he knew that he failed to disclose material facts in his tax forms, then he cannot have been ignorant about what was in them.

Hamed also "succeeded in persuading" the court that considered his guilty plea "to accept [his] earlier position." *Stallings*, 447 F.3d at 1047 (quoting *New*

*Hampshire*, 532 U.S. at 750). First, the court accepted the plea agreement itself, which included a stipulation that he had "knowingly and willfully committed [his] offenses." *See Mirando*, 766 F.3d at 547. Second, the court had to accept the plea's factual basis, including Hamed's statements during the plea colloquy. By requiring him to admit that the facts were "true, rather than" just that he "understood" them, *Lowery*, 92 F.3d at 225, the court not only ensured that "there [was] a factual basis for the plea" at the time, Fed. R. Crim. P. 11(b)(3), but that later he could not claim otherwise.[3]

Finally, Hamed "would derive an unfair advantage" if we were to allow him to change his position now. *Stallings*, 447 F.3d at 1047 (quoting *New Hampshire*, 532 U.S. at 751). Guilty pleas generally carry certain advantages, including "a drastically reduced sentence." *Lowery*, 92 F.3d at 225. Here, for example, Hamed received a reduction for "admitt[ing] his guilt and clearly accept[ing] responsibility." *See* U.S.S.G. § 3E1.1.

Allowing Hamed to retain the advantages of his guilty plea only to later avoid the consequences would be unfair. After all, he was repeatedly warned that pleading guilty could affect his immigration status. The plea agreement itself, which he "read," "carefully reviewed," and "underst[ood]," contained a section labeled "**<u>Immigration Consequences</u>**," (emphasis in original), which stated that pleading guilty may affect "his immigration status if . . . he committed certain offenses before he became a naturalized citizen of the United States." It further explained that, in light of the specific crimes involved, "removal [would be] presumptively mandatory." The plea agreement also placed him on notice that he was "bound by his guilty plea regardless of any immigration consequences . . . and . . . any advice [he had] received from his counsel." He "nevertheless affirm[ed] that he want[ed] to plead guilty."

---

[3]For example, shortly after the factual basis was established for the tax offense, the district court asked whether "all of those facts [were] true?" After some back and forth, Hamed eventually admitted that "[t]hey [were] true."

-7-

* * *

In sum, all three factors favor the application of judicial estoppel. So we cannot say that the district court abused its discretion in refusing to consider Hamed's lack-of-knowledge defense.

III.

One loose end remains. In Hamed's view, eight years after he pleaded guilty was just too long for the government to wait before seeking denaturalization. The defense of laches, as it is called, can "bar a lawsuit" when the party bringing the action is "guilty of [such] unreasonable and inexcusable delay that [it] has resulted in prejudice to the [other side]." *Goodman v. McDonnell Douglas Corp.*, 606 F.2d 800, 804 (8th Cir. 1979).

There is just one problem: laches is unavailable against the United States when it is "proceeding in [its] sovereign capacity." *Person v. United States*, 112 F.2d 1, 2 (8th Cir. 1940); *see also id.* at 3. The "vital question" here is whether "the government, in bringing this suit, [was] attempting to exercise a sovereign right, or [whether it should] be regarded the same as an individual . . . suing . . . for a private right." *United States v. Miller*, 28 F.2d 846, 849 (8th Cir. 1928); *see also Costello v. United States*, 365 U.S. 265, 281–82 (1961) (leaving open the question of whether laches applies to denaturalization proceedings).

The answer is straightforward. Denaturalization proceedings are an "attempt[] to exercise a sovereign right." *Miller*, 28 F.2d at 849; *see United States v. Mandycz*, 447 F.3d 951, 964 (6th Cir. 2006) (holding that laches is unavailable against the government in denaturalization proceedings). Just as granting "citizenship is deeply-rooted in national sovereignty," *Faddoul v. I.N.S.*, 37 F.3d 185, 189 (5th Cir. 1994), revoking it is a "quintessentially" sovereign act, *Mandycz*, 447 F.3d at 964. Indeed, there is a reason why only the United States can pursue denaturalization. *See* 8 U.S.C. § 1451(a) (establishing "the duty of the United States

-8-

attorneys . . . to institute proceedings . . . for the purpose of revoking and setting aside the order admitting [a] person to citizenship and canceling the certificate of naturalization"). It is *not* "the same" as "suing . . . for a private right." *Miller*, 28 F.2d at 849.

IV.

We accordingly affirm the judgment of the district court.

COLLOTON, Circuit Judge, concurring in the judgment.

Appellant Hamed was naturalized as a citizen of the United States in 2000. In 2010, however, Hamed was convicted of three offenses in federal court based on conduct that occurred before his application for naturalization. Those convictions show as a matter of law that revocation of Hamed's naturalization was warranted. Therefore, the district court correctly granted the government's motion for judgment on the pleadings.

Hamed was convicted in 2010 after he pleaded guilty to the following charges: (1) corruptly endeavoring to impair and impede the due administration of the Internal Revenue laws between January 1, 1997, and October 13, 2004, (2) knowingly and willfully conspiring to violate the International Emergency Economic Powers Act and Iraqi Sanctions Regulations between about March 1991 and May 2005, and (3) knowingly and willfully violating the Act and the Regulations by transferring funds on December 18, 2001. By pleading guilty to these charges without qualification, Hamed admitted the facts and essential elements that were alleged in the indictment. *United States v. White*, 408 F.3d 399, 402 (8th Cir. 1999); *O'Leary v. United States*, 856 F.2d 1142, 1143 (8th Cir. 1988) (per curiam).

In this civil proceeding against the United States, Hamed is collaterally estopped from disputing issues that were conclusively resolved in the criminal case brought by the government. *United States v. Al-Aqaili*, 550 F. App'x 356, 358 (8th

-9-

Cir. 2014) (per curiam); *United States v. Suarez*, 664 F.3d 655, 663 (7th Cir. 2011); *United States v. Jean-Baptiste*, 395 F.3d 1190, 1194 (11th Cir. 2005). Hamed's only argument against collateral estoppel is that criminal judgments obtained by guilty plea have less estoppel effect than judgments obtained after a jury trial. Hamed's contention is foreclosed by circuit precedent, which holds that "collateral estoppel 'applies equally whether the previous criminal conviction was based on a jury verdict or a plea of guilty.'" *United States v. Aleff*, 772 F.3d 508, 510 (8th Cir. 2014) (quoting *Hernandez-Uribe v. United States*, 515 F.2d 20, 22 (8th Cir. 1975)).

This precedent is sound. Hamed maintains that a conviction after guilty plea is different than judgment after trial because the factual basis required for a plea need only provide sufficient evidence to show that the defendant "likely committed the offense." *United States v. Marks*, 38 F.3d 1009, 1012 (8th Cir. 1994). But he overlooks that the entire record of a guilty plea also includes the defendant's admission that he committed the crime. In Hamed's case, the district court determined based on the entire record that Hamed was "guilty beyond a reasonable doubt." R. Doc. 1-2, at 103.

Given Hamed's convictions, the district court determined that revocation of naturalization was warranted as a matter of law. The court cited three grounds; on appeal, it is sufficient to address one: Hamed illegally procured naturalization based on a willful misrepresentation. *See* 8 U.S.C. § 1451(a).

Hamed answered "no" in November 1999 when asked on his application for naturalization whether he had ever "knowingly committed any crime" for which he had not been arrested. R. Doc. 1-3, at 4. Yet Hamed's conviction under 26 U.S.C. § 7212(a) establishes that his representation was false. He acted "corruptly" when he impaired and impeded the functions of the IRS between 1997 and 2004. This *mens rea* means that Hamed knew of a legal duty, voluntarily and intentionally violated that duty, and did so with intent to obtain an unlawful advantage for himself or another. *See Marinello v. United States*, 138 S. Ct. 1101, 1108 (2018). In other words, he knew that he was obtaining an unlawful benefit, and he acted with a

-10-

purpose or objective of obtaining that unlawful benefit.  *Id.* at 1114 (Thomas, J., dissenting); *see United States v. Dykstra*, 991 F.2d 450, 453 (8th Cir. 1993).

Given the conviction under § 7212(a), the district court correctly concluded that Hamed is "collaterally estopped from 'relitigating the issue of whether he knew that his conduct was illegal.'"  R. Doc. 30, at 5 (quoting Al-Aquaili, 550 F. App'x at 358).  Hamed's signature under penalty of perjury demonstrates that his misrepresentation on the application for naturalization was willful.  *United States v. Hirani*, 824 F.3d 741, 749 (8th Cir. 2016).  The government therefore established that Hamed's certificate of naturalization must be canceled.  8 U.S.C. § 1451(a).

I would affirm the judgment of the district court for these reasons.

_____