# United States Court of Appeals
## For the Eighth Circuit

_____

No. 24-1159
_____

Hartford Fire Insurance Company

*Plaintiff - Appellee*

v.

Chubb Custom Insurance Company

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Western District of Missouri - Joplin
_____

Submitted: January 16, 2025
Filed: July 2, 2025
_____

Before GRASZ, STRAS, and KOBES, Circuit Judges.
_____

STRAS, Circuit Judge.

Two insurers faced with the same loss think the other should pay. The district court made them split it under Missouri's mutual-repugnancy doctrine. *See Farm Bureau Town & Country Ins. Co. of Mo. v. Am. Alt. Ins. Corp.*, 347 S.W.3d 525, 532 (Mo. Ct. App. 2011). We reverse because the policies reveal that one must pay before the other.

I.

Michael Swanson killed a motorcyclist while driving his parents' Toyota Camry. When a wrongful-death lawsuit against him settled, his personal automobile-liability policy paid first, all the way up to its coverage limits. One question remained: who should pay next?

Two candidates emerged. One was a commercial automobile policy provided by Hartford Fire Insurance Company to Edward Jones Trust Company, Swanson's employer. The other, purchased through Chubb Custom Insurance Company, provided group excess-liability benefits to Edward Jones and some of its employees. Each insurer played a role in settling the case because the plaintiff, the motorcyclist's daughter, had alleged that Swanson was on the job when the accident occurred. Trouble is, both had "excess clauses" that required the other to pay first. *Planet Ins. Co. v. Ertz*, 920 S.W.2d 591, 593 (Mo. Ct. App. 1996). For that reason, Hartford thought the clauses canceled each other out and the companies were both liable for the loss. Chubb, which believed it should pay only after every other insurer had exhausted its coverage, insisted that Hartford was on the hook for all of it.

Hartford wanted the dispute resolved, so it filed a declaratory-judgment action in federal court. Its theory was that the dueling excess clauses were irreconcilable, which Missouri calls mutual repugnancy. *See Arditi v. Mass. Bonding & Ins. Co.*, 315 S.W.2d 736, 743 (Mo. 1958). If it was right, each insurer would pay its pro rata share of the remaining $2 million settlement balance. *See Farm Bureau*, 347 S.W.3d at 532. Hartford got its wish when the district court determined that the excess clauses were mutually repugnant because each was conditional on the other paying first. On that basis, it granted summary judgment to Hartford, denied judgment on the pleadings to Chubb, and ordered the two to share the loss.

## II.

We review these decisions de novo. *See Meek v. Kan. City Life Ins. Co.*, 126 F.4th 577, 585 (8th Cir. 2025); *United States v. Hamed*, 976 F.3d 825, 828 (8th Cir. 2020). Judgment on the pleadings is available when, "viewing all facts *pleaded* by the nonmoving party as true and granting all reasonable inferences in favor of that party, no material issue of fact remains to be resolved and the movant is entitled to judgment as a matter of law." *Hamed*, 976 F.3d at 828 (emphasis added) (citation omitted). Summary judgment is similar, except it requires us to view the *evidence* "in a light most favorable to the nonmoving party" and figure out if a "genuine issue of material fact" exists. *Meek*, 126 F.4th at 585–86 (citation omitted).

Both sides agree that Missouri insurance law governs this diversity case. When "[t]he Missouri Supreme Court has n[ot] confronted a situation like this one . . . our task is to predict what it would do." *Spire Mo., Inc. v. USIC Locating Servs., LLC*, 11 F.4th 908, 910 (8th Cir. 2021) (citation omitted). In doing so, "we follow decisions from the intermediate state courts when they are the best evidence of Missouri law." *Barfield v. Sho-Me Power Elec. Coop.*, 852 F.3d 795, 799 (8th Cir. 2017) (citation omitted).

## A.

A single loss can lead to multiple insurance claims. Sometimes, "each insurer disclaims liability on the ground that 'other insurance' is available to cover the loss." *Farm Bureau*, 347 S.W.3d at 529 (citation omitted). When there are competing other-insurance provisions, as here, we apply "[t]he general rules [of contract] interpretation" to see if each can "be enforced as written." *Todd v. Mo. United Sch. Ins. Council*, 223 S.W.3d 156, 160 (Mo. banc 2007) (citations omitted). If they cannot, only then does Missouri's mutual-repugnancy doctrine make them share it. *See Arditi*, 315 S.W.2d at 743.

Other-insurance clauses, true to their name, determine what happens when other policies cover the same loss, including who pays first. *See Distler v. Reuther Jeep Eagle*, 14 S.W.3d 179, 183 (Mo. Ct. App. 2000); *Ertz*, 920 S.W.2d at 593 ("'Other insurance' clauses are provisions inserted in insurance policies to vary or limit the insurer's liability when additional, concurrent insurance exists to cover the same loss."). They come in multiple flavors, but the kind here, an excess clause, requires payment only "after the limit of the primary insurance [has been] exhausted." *Ertz*, 920 S.W.2d at 593. A supercharged version, what courts call "true excess polic[ies,] provides coverage above a primary policy for specific risks," often regardless of whether there are competing excess clauses. *Id.* (emphasis omitted). The idea is that it almost always comes last. *See id.* at 596.

For excess policies and clauses, the general rule is that they only matter when primary insurance cannot fully cover a loss. *See id.* That is precisely the situation here: the coverage limits of Swanson's personal automobile-liability policy, which was primary, were too low to pay the entire wrongful-death settlement. The question for us is which excess insurer—Hartford or Chubb—comes next. *See In re Popkin & Stern*, 340 F.3d 709, 715–16 (8th Cir. 2003); *Ertz*, 920 S.W.2d at 593.

B.

The Hartford policy "provides primary insurance" for cars that Edward Jones owns and excess insurance for any "covered auto[s]" it does not. For "damages . . . caused by an accident and resulting from the . . . use of" a non-owned vehicle, the policy "is excess over any other *collectible* insurance." (Emphasis added). The word collectible will soon become important.

Chubb's policy, by contrast, "pay[s] only for covered damages in excess of *all* underlying insurance." (Emphasis added). It then reinforces that limitation in an excess clause that states, as relevant here, "[t]his insurance is excess over *any* other insurance." (Emphasis added). It is true excess, in other words, because it provides no primary coverage of any kind. *See Ertz*, 920 S.W.2d at 593.

-4-

When we "give effect to both" policies, *Farm Bureau*, 347 S.W.3d at 532 (citation omitted), the language makes clear who pays first. Hartford's policy is "excess over any other *collectible* insurance." (Emphasis added). Collectible, in this context, means "capable of being collected." *Webster's Third New International Dictionary* 444 (2002); *accord The American Heritage Dictionary of the English Language* 362 (5th ed. 2016). Recall that, in addition to the Hartford and Chubb policies, Swanson had a personal automobile policy, which was primary. It covered the accident and paid to its limit, which triggered Hartford's duty to pay according to its excess clause. No one disputes that it was "collectible."

The opposite was true of Chubb. As the provider of a true excess policy, *see Ertz*, 920 S.W.2d at 593, its duty to pay depended on whether "covered damages" remained "in excess of *all* underlying insurance." (Emphasis added). That is, it was "excess over *any* other insurance," collectible or not. (Emphasis added). Hartford's policy, although excess in some circumstances, qualifies as "any other insurance." *See Knowles v. Moore*, 622 S.W.2d 803, 806 (Mo. Ct. App. 1981) ("The word 'any' is all comprehensive and is the equivalent of the words 'every' and 'all.'").

Reading these provisions together, their plain language establishes the ordering: Swanson's personal automobile-liability insurer pays first, followed by Hartford, and then Chubb. Third in line, the Chubb policy would come into play only if the others did not fully cover the settlement.

C.

The word "collectible" is all it takes to distinguish this case from *Farm Bureau*, which Hartford insists is "on-point" and "dispositive here." The conclusion there was that the excess clauses in two insurance policies were "mutually repugnant," so the two insurers had to share the loss pro rata. 347 S.W.3d at 532.

In certain respects, *Farm Bureau* looks a lot like this case. It involved a volunteer firefighter who caused an on-the-job traffic accident while driving his own

car. *See id.*at 528. Three policies could potentially provide coverage, including a personal automobile policy. *See id.* Once its benefits were exhausted, however, the question was which one followed: a primary policy with a carve out for non-company-owned vehicles or an umbrella policy with an excess clause? *See id.* at 531–32. The answer was both, because "neither policy w[ould] pay unless the other ha[d] . . . , leaving [the insured] without the contracted coverage." *Id.* at 532.

*Farm Bureau* highlights the problem that "comparable" excess clauses can pose when an insured has multiple policies covering the same risk without a clear order of priority. *State Farm Mut. Auto. Ins. Co. v. W. Cas. & Sur. Co.*, 477 S.W.2d 421, 426 (Mo. banc 1972). Trying to pick one insurer over the other leads to "circular reasoning and produce[s] illogical results." *Ertz*, 920 S.W.2d at 594. If neither insurer paid until the other did, "an insured would be left without coverage." *Smith v. Wausau Underwriters Ins. Co.*, 977 S.W.2d 291, 294 (Mo. Ct. App. 1998). The way out of the conundrum is "mutual repugnancy," a last-resort doctrine that requires both to pay. *Farm Bureau*, 347 S.W.3d at 532.

In this case, however, distinguishing between Hartford and Chubb is possible by giving "effect . . . to the plain terms of the agreement[s]." *Id.* at 529; *see Wentzville Park Assocs., L.P. v. Am. Cas. Ins. Co. of Reading*, 263 S.W.3d 736, 740 (Mo. Ct. App. 2008) ("Two other[-]insurance clauses are not repugnant if both clauses can be given their full effect and the insured has coverage."). Hartford's policy is excess over "other collectible insurance," which includes Swanson's personal automobile-liability policy. Chubb's policy, by contrast, is "excess of *all* underlying insurance"—that is, everything else. (Emphasis added). Comparing the two, it becomes clear that there is no circularity problem in deciding that Hartford, with its differing language, comes next. *See Wentzville Park*, 263 S.W.3d at 740; *cf. Smith*, 977 S.W.2d at 292–93 (holding that two excess clauses were not mutually repugnant when one referenced "any other valid and collectible insurance" and the other used "any other insurance").

## III.

We accordingly vacate the district court's judgment and remand with instructions to grant Chubb's motion for judgment on the pleadings.

_____